PALMER *against* GRANT and another.

Where a note was drawn in these words—" We, *A.* and *B.* as principal, and *C.* and *D.*, surety, promise to pay," &c. ; which *A.* and *B.* signed, in the usual place of signature ; *C.* and *D.* did not so sign, but put their names on the back of the note ; it was held, that *C.* and *D.* were liable, not as guarantees merely, but as joint promisers with *A.* and *B.*

This was an action of *assumpsit.* The declaration contained three counts.

The first stated, That the defendants, at *North-Stonington,* on the 1st day of *July,* 1819, in and by a promissory writing or indorsement, under their hands, became surety, that one *Wheeler Grant* and one *Thomas P. Wattles* should pay to the plaintiff a certain writing or note of hand, for value received, by said *Grant* and *Wattles* well executed, on the day aforesaid, and of that date, payable to the plaintiff, for the sum of 62 dollars, in six months from said 1st day of *July,*

*New-London,*
*July,*
*1822.*

Palmer
*v.*
Grant.

1819, with interest ; that the plaintiff used all lawful means to collect said note of said *Grant* and *Wattles,* by a suit, commenced on the 4th day of *January,* 1820, on which suit the plaintiff obtained judgment, at the next succeeding *March* term of the county court, against *Grant* and *Wattles,* for the sum of 72 dollars, and 36 cents, debt, and costs of suit, and took out execution thereon ; which execution the plaintiff was wholly unable to collect of said *Grant* and *Wattles,* and on the 8th of *May,* 1820, it was legally returned *non est inventus ;* of all which the defendants had due notice ; that the defendants thereby became liable to pay to the plaintiff the amount of said execution, and his expense thereon, *viz.* the further sum of five dollars ; and that the defendants afterwards, in consideration of their said liability, assumed, &c.

The second count was as follows : That the defendants, at *North-Stonington,* on the 1st day of *July,* 1819, in and by a certain promissory note or writing, under their hands, by them well executed, of that date, promised the plaintiff, jointly with one *Wheeler Grant* and *Thomas P. Wattles,* to pay to him, or order, for value received, the sum of 62 dollars, in six months from said 1st day of *July,* 1819, with interest ; as by said promissory note or writing ready in court to be shewn appears : yet the defendants, their promise aforesaid not regarding, have never performed the same, though often requested and demanded ; and the same hath never been paid, by said *Grant* and *Wattles ;* but said promissory note or writing remains wholly unpaid, and due to the plaintiff.

The third count stated, That on the 1st day of *April,* 1819, *Wheeler Grant* and *Thomas P. Wattles,* traders in company under the firm of *Grant* and *Wattles,* were justly indebted to the plaintiff in the sum of 62 dollars, and being so indebted, and desirous to obtain credit therefor, for the term of six months, proposed to the plaintiff to secure the same, by their promissory note for that sum, as principal, and the names of *William Grant* and *Daniel Carr,* (the defendants) as surety, for the same sum, to which the plaintiff agreed ; that thereupon the said *Grant* and *Wattles,* and the defendants, then and there, made and delivered to the plaintiff, to secure said debt, a promissory note or writ in the words following, *viz.* " **Six** months from date, we, *Grant* and *Wattles,* as principal, and *Daniel Carr* and *William Grant,* surety, promise to pay *Cyrus Palmer,* or order, sixty-two dollars, with interest, value received.                                             *Grant & Wattles.*"

*North-Stonington, July* 1, 1819.

That on the back of said note were written, in the proper hand-writing of the defendants, these words, *viz.* " *Daniel Carr.*

*William Grant.*"

That before said note became due, said *Grant* and *Wattles* failed, and became bankrupt, and have ever since been unable to pay the same ; that the plaintiff has used due and legal means to collect said note of said *Grant* and *Wattles*, but by reason of said bankruptcy, has collected nothing ; of which non-payment the defendants, on the 4th day of *January*, 1820, had due and legal notice ; that the defendants thereby became liable, and in consideration thereof, in and thereby promised the plaintiff to pay to him the sum contained in said note, in a reasonable time after said note fell due, when thereunto requested ; that the defendants, their promise aforesaid not regarding, have never performed the same, &c.

The cause was tried at *New-London*, *January* term, 1822, before *Hosmer*, Ch. J.

On the trial, the plaintiff abandoned the first count in the declaration. In support of the second count, he adduced evidence to prove, that on the 1st of *July*, 1819, *Wheeler Grant* and *Thomas P. Wattles* made and delivered to him, the plaintiff, a note of the tenor above recited ; and that, at the time of making such note, the defendants did not sign it, but put their names on the back of it. On these facts alone the plaintiff contended, that the defendants thus put their names on the back of the note, for the purpose of securing the debt for which it was given, by a direct and absolute promise ; and prayed the judge to instruct the jury, that the note so given, was a joint note, and supported the second count in the declaration. But the judge instructed the jury, that the note, with the evidence accompanying it, did not sustain the promise in the second count alleged.

In support of the third count, the plaintiff gave in evidence the note in question, and adduced other evidence tending to prove the other facts in the third count averred, except that no express promise was offered to be proved ; and then requested the judge to instruct the jury, that on their finding such facts proved, exclusive of the promise, they must give their verdict for the plaintiff. But the judge instructed the jury, that as no express promise was attempted to be proved, the law did not, on the other facts stated in the third count, imply a promise, such as was therein stated ; and if these

*New-London,* facts had been proved, they would not authorize a verdict in
July,
1822.     favour of the plaintiff.

Palmer
*v.*
Grant.

The jury thereupon returned a verdict for the defendants;
and the plaintiff moved for a new trial, for a mis-direction.

*Goddard,* in support of the motion, contended, That this
was the joint note of all the persons, whose names were on
it; the defendants being joint promisers with *Grant* and *Wat-
tles.* The nature of the undertaking, he insisted, was evin-
ced, by the language used; not by the place of signature,
which is immaterial. He cited *Hunt,* admr. v. *Adams,* 5
*Mass. Rep.* 358. *Carver* v. *Warren,* 5 *Mass. Rep.* 545. *Hunt,*
admr. v. *Adams,* 6 *Mass. Rep.* 519. *Hemmenway* v. *Stone,*
7 *Mass. Rep.* 58. *Moies* v. *Bird,* 11 *Mass. Rep.* 436. *White* v.
*Howland,* 9 *Mass. Rep.* 314. He also referred to, and com-
mented on, *Parker* v. *Lincoln* & al. 12 *Mass. Rep.* 16. *Wil-
liams* v. *Granger,* 4 *Day's Rep.* 444.

*Halsey* and *H. Strong,* contra, insisted, That the defendants,
not having *signed,* but *indorsed* the note, had assumed the
responsibility of *indorsers* only, and were not liable as joint
promisers with those who did sign it.

Hosmer, Ch. J. The plaintiff's declaration contains three
counts, the first and third of which are against the defendants
as indorsers, of a promissory note. These, however, are not
in controversy; and the only question before the court re-
lates to the second count. In this the plaintiff declares on a
promissory note, executed by the defendants, jointly, with
*Wheeler Grant* and *Thomas C. Wattles.* To support this
count, the plaintiff gave in evidence a note, expressed in the
following words: " Six months from date, we, *Grant* and
*Wattles,* as principal, and *Daniel Carr* and *William Grant,* as
surety, promise to pay *Cyrus Palmer,* or order, sixty-two dol-
lars." This writing, *Grant* and *Wattles,* the debtors of *Pal-
mer,* signed as makers; but the defendants, who were sure-
ties, only put their names on the back of it. Why they *in-
dorsed* a note, which, from its phraseology, the payee obvi-
ously intended they should subscribe as makers, the motion
does not explain. There is no ground of pretence, the mo-
tion being adhered to, that there was any proof, indicative
of the defendants' intention to subscribe; or that they ever
agreed to become makers of the note; or that it was written,

with their knowledge or approbation. On the preceding facts *New-London,*
*July,*
*1822.*

*Palmer*
*v.*
*Grant.*
alone, without any other proof or explanation, save that which
the nature of the transaction furnished, the case was commit-
ted to the jury. On the one hand, the plaintiff insisted, that the
defendants put their names on the back of the note, not as
endorsers, but as makers ; thereby intending to assume the
payment of the debt, by a direct and absolute promise ; while,
on the other hand, the defendants contended, that they were
sureties only, and indorsers of the note, having declined to
become responsible, in all events, for the payment of a debt,
which they did not owe, and only intended to make secure,
by a collateral engagement. The court below, considering
this to be the nature and language of the transaction, instruct-
ed the jury accordingly ; and to review this determination, is
the object of the present motion.

The sole question before the court, is, Whether the defend-
ants are makers of the note in question, or only indorsers.
The maker of a note, is one, who subscribes to it his name ;
and by this act of his, contracts absolutely, to pay it accor-
ding to its tenor ; and the indorser is one, who puts his name
*in dorso*, that is, *upon the back of it ;* from which act his de-
nomination of indorser is derived ; and by thus doing, he en-
gages, not to pay the note when it falls due, but to be ultimate-
ly responsible, on condition that it cannot be collected of the
maker. It is incumbent on the plaintiff to convince the
court, that the defendants are makers of the note in question ;
and to accomplish this, he must support, at least, one of
three propositions. He must either show, that the defendants
have actually become makers, by signing the note in the usual
manner ; or that they put their names on the back of it, there-
by intending to become makers, and not indorsers ; or finally,
he must satisfy us, that although the defendants have not ac-
tually signed the note as makers, and there is no proof deri-
vable from any source, that they had the intention of doing
it, they, notwithstanding, are such, by construction of law.

1. The plaintiff must show, that the defendants have ac-
tually become makers, by signing the note in the usual man-
ner. This proposition he has not attempted to sustain ; nor
can it be supported. The defendants, by putting their names
on the back of the note, have actually indorsed it ; and so
soon as the facts are understood, the evidence is irresistibly
intuitive, that actually they are not makers, but indorsers. I
here take leave to express my regret, that the argument

New-London,
July,
1822.

Palmer
v.
Grant.

does not make a final rest, at this precise point; and that contracts so useful and universal in the commercial world, as the making and indorsing of promissory notes, are not considered as possessing an unquestionable character, from the location of the contractor's name. However a particular mischief, arising from the want of common care and prudence, may press on the mind; yet certain I am, that the general convenience imperatively demands it should be disregarded, and not be permitted to shake those pillars of confidence, the actual signing and actual indorsing, by which the contracts of the parties, have hitherto been estimated. The novelty now first attempted, of going beyond the direct acts of the parties, to ascertain the character of their engagements, is, I fear, pregnant with consequences, injurious to the general good. Until the present moment, the actual subscriber of a note has been deemed the maker, and the actual signer on the back of it, the indorser. Every person, by mere inspection, has believed, that he knew the nature of the contract, whether it were absolute or conditional. An adherence to this simple principle, in my judgment, is of unspeakable consequence, in relation both to bills of exchange and promissory notes. " The wit of man," said Chief Baron *Eyre*, in *Gibson & al.* v. *Minet &* al. 1 *Hen. Bla.* 606. " cannot devise any thing better for circulation. The value of the writing, the assignable quality of it, and the particular mode of assigning it, are created and determined, in the original frame and constitution of the instrument itself; and the party to whom such a bill of exchange is tendered, has only to read it, need look no farther, and has nothing to do with any private history that may belong to it." This facility of knowing, by mere inspection, the character and obligation of the parties to a note like the present, is equally desirable as knowledge concerning bills of exchange, without any laborious process of the intellect, for which, mankind in general, are entirely unqualified. I would apply to the subject before the court, an ancient maxim, and, as a general truth, as wise as it is ancient; *Qui intelligit nomina, res etiam intelligit.*

2. As the plaintiff, most manifestly, cannot support the position, that the defendants have actually become makers of the note, by signing it, in the usual manner; he has endeavoured to sustain the second proposition before mentioned, that they put their names on the back of it, thereby intending to become makers, and not indorsers.

*New-London,*
July,
1822.

Palmer
*v.*
Grant.

This intention, as there was no extrinsic proof, must solely be derived from the nature of the transaction. There is no pretence for the assertion, that the defendants were the debtors of the plaintiff; or that they ever agreed to pay the debt in question; or even that the note was written with their knowledge, or their assent to its phraseology. It is perfectly consistent with the facts appearing on the motion, that the note was drawn by the plaintiff, in the defendants' absence; that their only agreement was to become the sureties of *Grant* and *Wattles;* and that, on the presentment of the note for their signature, they refused to subscribe it, and assume a direct engagement, to pay a debt, which they did not owe. Were they not named in the body of the note, as if they were to become promisers, a fact of which it does not appear that originally they had the least knowledge, or for which they delegated any authority, it would not bear an argument, that they were makers. The only inference of intention, on which any reliance has been, or can be, placed, is deduced from the expression on the face of the note; " We, *Grant* and *Wattles,* as principal, and *Daniel Carr* and *William Grant,* as surety, promise to pay." When the force of this expression is under enquiry, let it be constantly present in the recollection, that the defendants were not the plaintiff's debtors, nor agreed to pay the debt of *Grant* and *Wattles;* that the note was not written with their knowledge or assent; that they were only sureties; and, that when presented to them for signature, they only indorsed it. What, then, is the deduction resulting from these facts? Undoubtedly, that the plaintiff, when the note was written, intended that the defendants should subscribe it jointly with *Grant* and *Wattles;* and this, in my judgment, is the entire inference, which, on the case presented, the court is authorised to make. Had the defendants been the plaintiff's debtors, the argument, that they intended to oblige themselves, by an absolute promise, would press on the mind with redoubled force. No good reason could be assigned, why they should promise to pay their own debt, on the condition that it could not be collected of their co-debtors, *Grant* and *Wattles.* But being sureties only, from the nature of the transaction, the presumption is much greater, that they became indorsers, meaning to take on themselves a collateral responsibility only, than that they intended to assume a direct and absolute engagement. And when an effort is made to convert sureties, who have indorsed, into ma-

New-London,
July,
1822

Palmer
v.
Grant.

kers of a promissory note, the least that can be demanded, is, either satisfactory evidence, or a resistless inference, that they made an agreement to subscribe as makers, but through mistake, put their names on the back of it. If the defendants knew what they did, and the effect of an indorsement, and it be supposed, that in reality they intended to become joint makers of the note with *Grant* and *Wattles*, the transaction is inconceivably surprising. Strange supposition! The defendants, that they might be considered makers of a note, omitted to sign it, and by this usual and unequivocal act, infallibly to demonstrate their intention ; but voluntarily become indorsers, the known *indicium* of a conditional engagement. to indicate they were promisers! Upon the same principle, *Grant* and *Wattles* should have indorsed the note, that by the rule of contraries, they might manifest their intention of becoming makers. In *Jackson* v. *Richards*, 2 *Caines* 343. much more sensible principles are advanced by Ch. J. *Kent.* " When a person (said he) signs a note, in the character of indorser, the presumption is, that he is to receive all the privileges of that character. If he meant to be absolutely bound as a co-debtor, he would have signed the note jointly with the drawer, or his meaning would have been, in some other manner, declared." There is no difficulty in perceiving, what was the real transaction between *Palmer* and the defendants. It, undoubtedly, was his intention, that the defendants should become joint makers of the note in question, with *Grant* and *Wattles*. In the hope that no objection would be made, he caused the note to be written, which, on its being exhibited, the defendants refused to sign. Frustrated in his expectation, he was induced to accept their indorsement. The exhibition of the note, with the peculiar phraseology on its face, contained a request, that the defendants would sign it as makers ; and that they refused to do this act, is convincingly apparent, from their having become indorsers. The plaintiff, as well as the defendants, knew perfectly well the difference of effect, between subscribing and indorsing ; and the supposition is preposterous, that he would have accepted an indorsement, if the defendants were under obligations to sign as makers.

The location of the contractor's name, whether at the foot or on the back of a note, if not absolutely decisive of intention, is, at least, an impressive *indicium*, and powerful to show the party's meaning. If the name is placed on the

back of a note, the person becomes an indorser; and if at the *New-London,* July, 1822.

Palmer
*v.*
Grant. foot, he is the maker. The terms, maker and indorser, are universally understood, as having a precise meaning, defined by general practice; and I feel a strong aversion against the adoption of principles of construction, which may excite doubt, or threaten instability, to one of the most common species of engagement.

On this head of enquiry, I conclude, with the clearest conviction, that the defendants never intended to become makers of the note in question; but that it was their design to do, what the strong language of their act declares them to have done, that is, to become indorsers.

3. If, then, the defendants have not actually become makers, by signing the note in question, in the usual manner; and if they have not put their names on the back, thereby intending to become makers, and not indorsers; it only remains for the plaintiff to show, that they have become makers, by construction of law. This is a legal impossibility, as the law fastens on a person no contract, which he did not intend to make.

An effort, however, has been made to sustain the above proposition, by the determinations under the statute of frauds; but their force, in my judgment, has been greatly misapprehended. By the statute alluded to, certain agreements are required to be in writing, and signed by the party, or his attorney. In the construction of this act, the principle which has been adopted, to prevent instruments from being ineffective, demands, that the signature should have the effect of giving authenticity to the whole instrument; and when the name of the contractor is subscribed, in such a manner, as to produce this consequence, it is considered as of little importance in what part of the writing it is found. In the application of this principle, the courts have assumed great latitude, quite beyond what would be admissible, were it *res integra. Pow.* on *Dev.* 63. The insertion of a name at the beginning of an instrument, or the subscription of the party personally, or by his agent, as a witness, with knowledge of the contents, have been held to be a sufficient signing within the law. See the cases in *Sugden,* p. 54.

These determinations, however, have no bearing on the present case, for two distinct reasons. In the first place, they all profess to be founded on the ground of the contractor's *intention.* But in this case, there was no intention, on the

HARVARD LAW SCHOOL LIBRARY.

*New-London*
July,
1822.

Palmer
*v.*
Grant

part of the defendants, to become makers of the note, nor to give authenticity and effect to the instrument. It was equally effective, whether the defendants were makers or indorsers. *Grant* and *Wattles*, by their subscription, had made it a valid note ; and the defendants, by their indorsement, had assumed a collateral responsibility. In the next place, the construction under the statute of frauds, is governed by the *subject matter* of the contents, embraced within it ; which is not analogous to the subject matter of the principal agreement under discussion. In the cases under the statute, unless the contract is signed, it is an entire nullity, and utterly ineffective ; and the name of the party, wherever it is found, if it be not considered as an authentic signature, is a perfectly nugatory act. But in the case before us, the signature is valid and efficient, whether the defendants are considered as indorsers or makers ; and the enquiry merely relates to the nature of their contract, and the mode of their responsibility. It is easily perceived, that the subjects of the preceding cases, are different ; and that even the same act, for this reason, leads to a different inference. My reply, then, to the cases under the statute of frauds, is, that the determinations ought not to be extended, even on principles of analogy ; and what is most important, that there is no analogy between those cases and the one before the court.

To sustain the proposition under debate, the plaintiff's counsel have cited several determinations, which are divisible into two classes.

The first class consists of decisions on contracts, *written at full length before they were signed,* and is nothing more than the construction given by the court to certain expressions. *Hunt* v. *Adams,* 5 *Mass. Rep.* 358. *Carver* v. *Warren,* 5 *Mass. Rep.* 545. *Hemmenway* v. *Stone,* 7 *Mass. Rep.* 58. *White* v. *Howland,* 9 *Mass. Rep.* 314. *Upham* v. *Prince,* 12 *Mass. Rep.* 14. *Williams* v. *Granger,* 4 *Day,* 444. The irrelevancy of these decisions to the matter in controversy, is too palpable to demand illustration.

The second class comprises determinations of the supreme judicial court of *Massachusetts,* which have gone the full length of the plaintiff's wishes, and beyond the exigencies of his case. In *Joselyn* v. *Ames,* 3 *Mass. Rep.* 274. it was decided, that an indorser of a note not negotiable, given for a valuable consideration, may write over the name of the indorser, a promise to pay him the contents of the note. This case

was adjudged on the ground of a former determination, in *New-London, July, 1822.* *Massachusetts*, which was the only cited decision, except *Russel* v. *Langstaff*, *Doug.* 514. The latter case was an action against an indorser, *as such*, who had put his name on the back of a blank copperplate check, not filled up ; and its irrelevancy to the point before the court is too apparent, to have imparted any authority for the decision in *Joselyn* v. *Ames*. But, in *Moies* & al. v. *Bird*, 11 *Mass. Rep.* 436. the supreme court in *Massachusetts*, advanced a step further, and adjudged that an indorsement of a note in blank, without any writing over it, made the indorser liable to pay the contents of the note, as an original promisor. If these determinations are recognized as being the law of the state ; then, had the note in question been destitute of the phraseology on its face, so much commented on, the plaintiff might demand payment of the defendants, as the makers. To these and similar decisions of a learned and highly respectable judiciary, I need only reply, that they are not conformable to the law of *Connecticut*. In this state, a blank indorsement has long been considered, as containing only a conditional warranty ; and to this effect the indorsement may be filled up, and if not filled up, it will receive this construction. But, as was correctly said, by Ch. J. *Swift*, in his *Law of Ev.* 342. the indorsee "cannot insert any special contract repugnant to the nature of a blank indorsement, as an engagement to pay the note, if not paid by the debtor, when due. When an indorsement in blank is thus filled up, by a stipulation repugnant to the nature of it, the party will be permitted to show, that the indorsement was in blank, and then such a stipulation will be void." Precisely to the same effect is the case of *Bradley* & al. v. *Phelps*, 2 *Root* 325 ; and such has been the invariable current of usage and decisions in this state, probably, beyond the time of memory. Constant practice and an uniform series of determinations, have settled the above principle incontrovertibly ; and the force which can uproot it, can equally prostrate all the law in the state.

This novel attempt on the plaintiff's part, to convert the indorser of a note, into the maker, has not, so far as my knowledge extends, any support or countenance from the established principles or adjudged cases in *Westminster-Hall*, or in any of the *United States*, with the exception of those, which have already been cited.

In conclusion, I cannot entertain even the shadow of a doubt.

*Palmer v. Grant.*

*New-London,*
July,
1822.

Palmer
*v*
Grant.

that the determination of the court below was correct ; and therefore, I do not advise a new trial.

PETERS, J. The declaration contains three counts. The first was wisely abandoned at the trial ; and the third wss correctly disposed of, by the judge. The second charges the defendants as makers of a promissory note jointly with *Grant* and *Wattles,* who are named in the body of the instrument as principals, and the defendants as sureties. *Grant* and *Wattles* signed the note, and the defendants indorsed it. The defendants pleaded the general issue ; the plaintiff gave the note in evidence ; and the judge decided, that it did not support the declaration.

It is admitted, that the defendants, *propriis manibus,* made themselves parties to the note, as promisers or indorsers ; but they claim, that their undertaking was collateral ; and it is probable, that such was their intention ; but this is not inferrible from the words used, nor proveable by extraneous evidence. The contract contains no ambiguity, and must speak for itself. 1 *Phill. Ev.* 489. If the defendants are not liable as makers, it is manifest, that they are not liable at all ; as a second indorser merely guaranties the contract of the first, by virtue of an interest and power derived from him ; but he has done nothing ; and the defendants must have been indorsees before they could be indorsers. To bind a party by his signature to a contract, it is perfectly immaterial where it is placed, if it appears from the instrument to have been made by him, with an intention to obligate himself. " It is a point settled," says Chancellor *Kent,* " that if the name of the party appears, and is applicable to the whole substance of the writing, and put there by him, or by his authority, it is immaterial in what part of the instrument the name appears, whether at the top, in the middle, or at the bottom." And so said the supreme court, and the court for the correction of errors. *Clason* v. *Bailey &* al. 14 *Johns. Rep.* 484. " It has been decided, " says Lord *Eldon,* " that if a man draw up an agreement, in his own hand-writing, beginning, I, *A. B.* agree, &c. and leave a space at the bottom for signature, it may be considered as a note in writing," &c. *Saunderson* v. *Jackson,* 2 *Bos. & Pull.* 237. *Knight* v. *Crockford,* 1 *Esp. Rep.* 190. The same doctrine has been applied to a will of land, a more solemn instrument than a negotiable note. *Lemayne* v. *Stanley,* 3 *Lev.* 1. And it may be added, in the language of Lord Chan-

cellor *Hardwicke*, *Welford* v. *Beazley*, 3 *Atk.* 503. "Here the defendants signed it as a complete agreement; and as they knew the contents, are to be bound by it." But what is this complete agreement? "We, *Grant* and *Wattles*, as principal, and *Daniel Carr* and *William Grant*, as surety, for value received, promise to pay," &c. And what is the obligation of a surety? To *pay.* And of an indorser? To *pay*, also, if the maker, or previous indorsers do not, and the indorsee use due diligence.

In *Hunt*, admr. v. *Adams*, 5 *Mass. Rep.* 358. under the signature of *Chaplin*, the maker, the defendant added, "I acknowledge myself holden as surety for the payment of the demand of the above note, witness my hand, *B. Adams ;*" and this he claimed to be a collateral undertaking. But Ch. J. *Parsons* said, " The defendant is an original party to the contract, as well as *Chaplin*. The contract, in its legal construction, is a promise made as well by the defendant, as by *Chaplin*, for value received. But as to the intestate, (the promisee) they may be considered as joint and several promisers."

It has been suggested, that our decision, in *Huntington* v. *Harvey*, ante 124 was opposed to the doctrine, which I am endeavouring to establish. But, in that case, the indorser, who was neither promisee nor indorsee, nor originally a party, placed his name on the back of the note in blank, long after it was made ; and was, therefore, considered as a mere guarantor, or collateral promiser, who had not participated in the original consideration. But in the case before us, the defendants shared in the *value received*, and placed their names on the back of the note, when it was made, describing themselves as sureties, and joint promisers with their principals. The writing, on the face of it, imports one original, entire transaction ; and the *value received* is evidence of a consideration embracing the defendants, and their principals. *Leonard* v. *Vredenburgh*, 8 *Johns. Rep.* 29. I, therefore, advise a new trial.

CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial to be granted.