| 6 | 315 |
|---|---|
| 60 | 422 |

**Beckwith and another *against* Angell. (a)**

*A.* at *Providence* in *Rhode-Island*, on the 14th of *April*, 1819, gave to *B.* a promissory note, payable four months after date. This note having remained unpaid until the 25th of *April*, 1820, *C.*, in consideration that *B.* would forbear the collection of it, for sixty or ninety days longer, agreed to guaranty the payment thereof; and in pursuance of such agreement, indorsed his name in blank on the note; and *B.* afterwards filled up the indorsement in these words, *viz.* "*April* 25th, 1820. In consideration of further forbearance, I guaranty the payment of the within note." In an action brought by *B.* against *C.* on this indorsement, it was held, 1. that proof of the special agreement between *B.* and *C.* was admissible; 2. that *B.* was entitled to fill up the blank indorsement pursuant to such agreement; and 3. that having so filled it up, he was entitled to recover, without proof of the demand and notice requisite in cases of bills and notes regularly negotiated.

This was an action of *assumpsit*, tried at *Brooklyn, January* term, 1823, before *Brainard*, J.

In one of the counts, of which there were several, the cause of action was stated thus: That on the 14th of *April*, 1819, *Ephraim Angell*, the son of the defendant, being indebted to the plaintiffs in the sum of 145 dollars, 36 cents, in payment of the same, made and delivered to the plaintiffs his writing or note in the words and figures following, *viz.* " *Providence*, 14th

*(a)* This case was argued and decided at *Brooklyn*, in *July*, 1823, and would have been reported and published with the decisions of that term, but for obstacles not within the Reporter's power to remove. *Vid. ante* 94.

*Windham,*
*July,*
*1823.*

Beckwith
*v.*
Angell.

*April*, 1819. Four months after date, I promise to pay *Beckwith & Pearson*, or order, one hundred forty-five ·dollars, 36 cents, at either bank in this town; for value received in cotton. *Ephraim Angell*."

That said note remained unpaid and due from said *Ephraim*, until the 25th of *April* 1820, when the plaintiffs were about to collect the same of said *Ephraim* by suit; and the defendant proposed to the plaintiffs, that in consideration that they would further indulge the ·said *Ephraim*, for sixty or ninety days, he would, by his indorsement, guaranty the payment of said note; to which the plaintiffs agreed; and the defendant, in consideration thereof, indorsed the said note in writing, under his hand, and did thereby assume, and promise, and guaranty to the plaintiffs, that said *Ephraim*, at the end of sixty or ninety days, would be of sufficient ability to pay said note, and would pay the same: That long before the expiration of said sixty or ninety days, the said *Ephraim* became a total bankrupt, and wholly unable to pay said note, and has never paid the same, or any part thereof; of which the defendant had due notice.

Another count was like this, except that the undertaking of the defendant was stated thus: The defendant proposed to the plaintiffs, that if they would further indulge his said son *Ephraim*, for sixty or ninety days, in payment of said note, he the defendant would, by his indorsement of said note, guaranty that said *Ephraim* should make payment thereof, at the expiration of said sixty or ninety days, to which the plaintiffs agreed, and postponed the collection of said note from said *Ephraim* accordingly; and the defendant, in consideration thereof, by his indorsement of said note, did guaranty to the plaintiffs the payment of said note as aforesaid.

On the trial of the cause, on the plea of *non-assumpsit*, the plaintiffs gave in evidence the note recited in the declaration, accompanied with proof of its execution. They also offered testimony to prove, that the note having remained unpaid until the 25th of *April*, 1820, the defendant proposed to the plaintiffs, to guaranty the payment of it, if they would forbear the collection of it, for sixty or ninety days longer; that this was agreed to; and that in pursuance of such agreement, the defendant indorsed his name in blank on the note; and that the plaintiffs wrote over the defendant's name so indorsed, these words, *viz.* "*April* 25th, 1820. In consideration of further forbearance sixty or ninety days, I guaranty payment of the within note."

To the admission of this evidence the defendants objected.
The judge decided, that it was competent for the plaintiffs to
prove *when* the indorsement of the defendant's name was made;
and that *Ephraim Angell* was, at that time, a bankrupt; but
the rest of the testimony excepted to, he rejected. The jury
returned a verdict for the defendant; and the plaintiffs mov-
ed for a new trial.

*G. Learned* and *Davis,* in support of the motion, contended,
That a blank indorsement of a note, while it is in the hands of
the immediate indorsee, and the question is between the origi-
nal parties to the transaction, and them alone, may be filled up
according to the actual agreement of those parties. 1 *Swift's
Dig.* 434. *Ulen* v. *Kittredge,* 7 *Mass. Rep.* 233.

*Judson,* contra. He cited *Swift on Bills* 342. 1 *Swift's
Dig.* 721.

PETERS, J. The undertaking of an indorser is always col-
lateral, unless made otherwise, by a special agreement. But
the defendant was not an indorser; because he was neither
promisee nor indorsee. *Palmer* v *Grant,* 4 *Conn. Rep.* 389.
His contract was, therefore, necessarily *special,* and whatever
the parties chose to make it. Had it remained blank, it must
have been considered, *prima facie,* a guaranty, or nothing.
This depended on the inducement and intention, with which
the defendant wrote his name; and the question now is, could
*these* be proved by parol.

Had it been technically an indorsement, it might have been
explained by testimony *aliunde,* as the late Chief Justice *Swift,*
whose authority on this occasion will not be questioned, in-
forms us, that the obligation, implied by a blank indorsement,
is, that the note is due, and collectable, by the use of due dil-
igence; and if filled up with a different stipulation, the assignor
may show, that the indorsement was in blank; and that while
it remains in blank, in the hands of the original assignee, it is
admissible to *prove any special agreement,* made between him
and the assignor, at the time of the assignment, as that there
was no warranty, &c. *Swift's Ev.* 332. 1 *Swift's Dig.* 434.
*Herrick* v. *Carman,* 10 *Johns. Rep.* 224. *Barber* v. *Prentiss,*
6 *Mass. Rep.* 430. Surely, then, if the assignor may show, by
parol, that there was no warranty, the assignee may show there
was a guaranty.

In *Josselyn* v. *Ames*, 3 *Mass. Rep.* 274. where the defendant had indorsed in blank, the note of *John Ames*, payable to the plaintiff, it was decided, that the plaintiff might fill the blank with an absolute promise to pay, and maintain an action upon the promise, on proving, by *parol*, a consideration, and the defendant's confession, that he was answerable for the debt.

In *Ulen* v. *Kittredge*, 7 *Mass. Rep.* 23. 235. upon a similar state of facts, the defendant claimed, that this being a promise to pay the debt of another, was void by the statute of frauds. "But we are of opinion," said the court, "that the defendant's signature upon the back of the note, with the authority given by him, to write over the signature, a sufficient guaranty, and such guaranty being accordingly written, and proved by parol, may be considered as a *memorandum* signed by the party, within the intent of the statute."

In *White* v. *Howland*, 9 *Mass. Rep.* 314. where the defendant with *Coggeshall*, had indorsed the note of *Taber*, payable to the plaintiff, who wrote over their names, a joint and several promise to pay the note, it was proved, that *Taber* had agreed to give a note to the plaintiff with two indorsers, and that the defendant objected to putting his name on this note, because it was not drawn as intended, but he did put his name upon it, and contended, that he ought to be treated as an indorser. But the court said, "We are satisfied, that this case is within the reason of *Hunt* v. *Adams*, 5 *Mass. Rep.* 358. and that the effect of the defendant's signature is the same as if he had subscribed the note on the face of it, as *surety*."

In *Moies* v. *Bird*, 11 *Mass. Rep.* 436. where the defendant had indorsed a note payable to the plaintiff, but declared at the time, (not to the payee,) that he would not be accountable, but would write his name to make the plaintiff easy; the court said, "that the effect of his signature was to make him absolutely liable to pay the note."

In *Upham* v. *Prince*, 12 *Mass. Rep.* 14. the promisee of a negotiable note transferred to the plaintiff, indorsed it thus: "*March* 25, 1809, I guarantee the payment of this note within six months. *A. H. Prince*." The court said "that the defendant's engagements amounted to a promise, that the note should be paid at *all events*, within six months."

But these decisions, it may be said, are not law in *Connecticut*. If, however, they are according to the course of the

common law, they will be respected, wherever *that law* is respected. They certainly are not peculiar to *Massachusetts.* Though many of them were made by a *Parsons* ; they have all been sanctioned by a *Spencer.* On whom can we repose with more safety ?

"Had it appeared," said Ch. J. *Spencer,* in *Herrick* v. *Carman,* 12 *Johns. Rep.* 159. 161. " that the plaintiff, (not payee nor indorsee,) had indorsed the note for the purpose of giving *Ryan,* (the maker,) credit with *Lawrence Carman & Co.* (the payees,) then, I should have considered him liable to them, or any subsequent indorser ; and the plaintiff's indorsement might have been converted into a guaranty to pay the note, if *Ryan* did not, according to the decision of the supreme judicial court, in *Massachusetts. Josselyn* v. *Ames,* 3 *Mass. Rep.* 274.

In *Nelson* v. *Dubois,* 13 *Johns. Rep.* 175. the defendant had indorsed in blank the note of *Brundige,* payable to the plaintiff, and the plaintiff offered to prove, that the defendant agreed to become the surety of *Brundige,* and said he considered himself bound to pay the note, and guarantied the payment of it to the plaintiff ; which the court below rejected as within the statute of frauds. But the judgment was reversed, by the supreme court ; and *Spencer,* J., who delivered their opinion, after citing and commenting on the previous cases in *Massachusetts,* and elsewhere, concluded in these words : " I confess, I do not perceive, that this case is at all within the statute. The defendant's promise is not to pay on the default of *Brundige,* but is an original undertaking as surety ; and the defendant is as much holden, as if he had signed the body of the note."

In *Campbell* v. *Butler,* in error, 14 *Johns. Rep.* 349. *Campbell & Harvey* indorsed in blank, two notes, made by *Low,* payable to *Butler,* who wrote over their names severally : " For value received, I undertake and promise to guâranty the payment of the within mentioned money, to the within mentioned *James Butler.*" It was proved, that the defendant indorsed the notes to give *Low* credit with *Butler ;* and the counsel for the defendant below contended, that he was liable as a mere indorser, on certain conditions only, as to due notice, &c. whereas, by the guaranty, he is made liable *at all events.* The holder has no right to convert the engagement of a *mere* indorser into a guaranty. But the court said : " The question is, wheth-

*Windham,*
*July,*
*1823.*

*Beckwith*
*v.*
*Angell.*

er the plaintiff below was authorized to write such a contract, over the names of the indorsers of the notes, respectively, and can sustain an action upon that contract? According to the decision in *Nelson* v. *Dubois,* and as the law is recognized in *Herrick* v. *Carman,* we think the plaintiff below had a perfect right to recover as on an *original undertaking* to pay, by each of the indorsers as guarantors of the note.

In *Allen* v. *Rightmere,* 20 *Johns. Rep.* 365. the defendant being the promisee of *Toan's* note, indorsed it thus : " For value received, I sell, assign, and guaranty the payment of the within note to *J. Allen,* or bearer. *L. Rightmere.*" The defendant claimed, that before the plaintiff could recover on the note, he must prove a demand of the maker, and notice to the defendant. But Ch. J. *Spencer,* who delivered the opinion of the court, said : " Proof of demand and notice of non-payment, were not necessary. The defendant's engagement, is, in effect, that *Toan* should pay the note, or that he would pay it. It is the duty of the debtor to seek the creditor, and pay his debt, on the very day it becomes due. As regards the maker of the note, and to render him liable, no demand is necessary. A demand of payment is necessary only to fix an indorser, or a surety, whose undertaking is conditional. An indorser does not absolutely engage to pay. It is a conditional undertaking to pay, if the maker does not, upon being required to do so, when the note falls due, and upon the further condition that the indorser should be notified of such default. The defendant insists, that he stands in the situation of an indorser merely ; but such is not the fact. The undertaking here is not conditional ; it is absolute, that the maker shall pay the note, when due, or that the defendant will himself pay it. In *Tillman* v. *Wheeler,* 17 *Johns. Rep.* 326. and the cases there referred to, it was taken for granted, that upon a guaranty, such as this, no demand or notice, would have been necessary. *Upham* v. *Prince,* 12 *Mass. Rep.* 14."

In *Russell* v. *Langstaffe, Doug.* 514. the defendant had indorsed five blanks, with intent to have them filled with negotiable notes, payable to the plaintiff, by *Galley,* the intended maker, with the defendant's indorsement in blank. At the trial, it was objected, that these notes being blank, when indorsed, were not then promissory notes; and that no subsequent act of *Galley* would alter the nature of the defendant's signature, which, when written, was a nullity. But Lord *Mans-*

*field*, said, "The indorsement on a blank note, is a letter of credit for an indefinite sum. The defendant said, "trust *Galley* to any amount, and I will be his security." It does not lie in his mouth to say the indorsements were not regular."

The authority of this case was recognized by *Buller*, J. in delivering his opinion in *Dom. Proc.* in *Lickbarrow* & al. v. *Mason* & al. 6 *East*, 21. n. wherein he said : " He who delivers a bill of lading indorsed in blank to another, not only puts it in the power of the person to whom it is delivered, but gives him authority to fill it up as he pleases."

So, in *Collins* v. *Emett*, 1 *Hen. Black.* 313. Lord *Loughborough* held, that a party's signing a blank paper and delivering it to *B.* to draw a bill of exchange, payable at such time, and to such person, as *B.* should think fit, was a binding instrument.

In *Violett* v. *Patten*, in error, 5 *Cranch*, 142. *Patten*, as indorsee, sued *Violett*, as indorser, of *Brooke's* note. The indorsement was in blank, by *Violett*, upon blank paper, with intent to give credit to *Brooke*, with *Patten*. In delivering the opinion of the supreme court of the *United States*, *Marshall*, Ch. J. said *inter alia* : " *Violett* has signed his name on this paper, for the purpose of giving *Brooke* a credit with *Patten*, and his signature has obtained that credit. The consideration is precisely the same, whether his name be on the face or back of the paper." " The objection [that the indorsement preceded the making of the note,] comes with a bad grace from the mouth of *Violett*. He indorsed the paper with the intent, that a promissory note should be written on the other side ; and that he should be considered as the indorser of the note. He is now concluded from saying or proving, that it was not filled up, when he indorsed it." It was also objected, that the statute of frauds and perjuries, rendered the contract void ; but the court held it did not.

It may, perhaps, be said, that some of these cases are irrelevant to the point in question. But in my humble opinion, they all clearly evince, that the import of a signature or indorsement in blank is not so immoveably fixed and determined as has been sometimes supposed ; and that blank indorsements and signatures, may be moulded into any shape to effectuate the intention of the parties. Vide *Hungerford* v. *Thompson*, *Kirby* 392. *Brewster* v. *Dana*, 1 *Root*, 266.

I advise a new trial.

*Windham,*
July,
1823.

Beckwith
*v.*
Angell.

CHAPMAN, J. was of the same opinion.

BRISTOL, J. concurred. He thought it unnecessary to consider the peculiar meaning, which, in this state, has been attached to the blank indorsements of promissory notes not negotiable; as this depended on the local usage of this state; nor whether this meaning, with respect to indorsements made in this state, could be varied, by proof of a positive contract made at the time when a note was indorsed; though were it necessary, in his opinion, it *might* be done. But in the present case, he thought the indorsement must be presumed to be made in the state of *Rhode-Island;* and, in the absence of all evidence as to the laws of that state, was to be governed by the common law; and that by the common law, the holder of a note has authority to write over a blank indorsement the real contract between the parties.

HOSMER, Ch. J. The note in question was made by *Ephraim Angell,* at *Providence,* promising to pay to the plaintiffs a specified sum of money, at either bank in that town. The defendant is an inhabitant of *Pomfret,* in this state; and the place where the indorsement was made, no where appears. It may have been made in *Connecticut,* or in either of the *United States.* This all important fact in the construction of the contract, should have been averred and proved. It is an established principle of law, that contracts must be construed by the *lex loci* where they are made; (*Medbury* v. *Hopkins,* 3 *Conn. Rep.* 472.) although the remedy upon them must be governed by the laws of the state where it is sought. *Atwater* v. *Townsend,* 4 *Conn. Rep,* 47. If the agreement be made in a foreign country, the law of that country must be proved *as a matter of fact;* and in *Westminster-Hall,* the courts will not even presume what the law of such country is, upon any particular point. *Fabrigas* v. *Mostyn, Cowp.* 161. *Male* v. *Roberts,* 3 *Esp. Rep.* 163. So far has this principle been carried, that in the case last cited, Lord *Eldon* held the defendant bound to prove, that the defence of infancy was available, by the law of *Scotland.* Suppose it to appear, that the agreement was made in a foreign country, but the law of such country is not proved. The legal consequence is, from the necessity of the case, that the liability of the defendant is presumed to be the same with his liability in the state or kingdom where the action is brought.

*Brown* v. *Grace*, 1 *Dowl. & Ryl.* 41. cited *Stark. Evid. part* iv. p. 568, 9. It must be so, or by infallible consequence, that he is not liable at all. The same principles have been recognized, by this Court, and applied to a transaction arising in the state of *Massachusetts*. *Hebron* v. *Marlborough*, 2 *Conn. Rep.* 18. *Sterling* v. *Plainfield*, 4 *Conn. Rep.* 114.

*Windham*, July 1823.

*Beckwith* v. *Angell*.

From the preceding remarks certain consequences are necessary and inevitable. Inasmuch as the place where the indorsement was made, is neither averred nor proved; and even the law of *Rhode-Island*, if inadmissible conjecture should suppose the contract to have been made in that state, is entirely unknown; the contract must receive its construction from the law of *Connecticut*. To such result this Court came, in the two cases last cited; and there not having been proved to them, the law of *Massachusetts*, the undoubted rule, if it had been known, the law of *Connecticut* was adopted.

What, then, is the law of this state, as applicable to the defendant's indorsing his name in blank?

By the plaintiffs, it is insisted, that over the defendant's name they are empowered to write any contract in relation to the within note; and, at least, that they may prove, by parol testimony, that the agreement specially indorsed, was actually made.

On the other hand, I shall endeavour to maintain the following propositions. 1. That by the law of this state, an indorsement in blank on a promissory note not negotiable, or if negotiable, by one who is not a party to the note, to insure the maker's responsibility, has a certain fixed import; and that such import is neither indorsed, in this case, nor conformable to the plaintiff's declaration. 2. That over the indorser's name the holder of a note cannot legally insert any contract made here, except that which the law imports. 3. That an indorsement of a promissory note is a written contract, and cannot be proved, by parol testimony, in whole or in part; and that such testimony is in direct opposition to the statute of frauds and perjuries.

1. The law of *Connecticut* giving a construction to indorsements in blank, on promissory notes not negotiable, and on negotiable n[...] one not a party to them, in order to warrant the ma[...] ponsibility, has long been settled. More than thirty years since, in *Bradley* v. *Phelps*, 2 *Root* 325. it was determined, by the highest judiciary in this state, that such

*Windham,*
*July,*
*1923.*

Beckwith
*v.*
Angell.

an indorsement was not an engagement, that the note should be paid in all events, but that the indorsee, by the use of due diligence, should be able to obtain payment of the maker. From that period to the present time there has been no diversity of opinion on this subject. Before the determination referred to, it had been decided, that the purpose for which the note was indorsed in blank, whether to warrant the maker's responsibility, or to authorize the collection of it,—might be proved. *Smith,* exr. v. *Barber,* 1 *Root* 207. *Brewster* v. *Dana,* 1 *Root* 266. But if a warranty of any kind was intended, the determinations of our courts, and the universal practice of the community, invariably and uniformly have declared, that the contract is conditional ; not that the maker should pay the note at maturity, or that the indorser would pay it ; but that it is collectible, by active diligence. Not a decision or *dictum* to the contrary, is producible. And however the courts in the contiguous states, have differed from us, in the construction of the before-mentioned contract, yet in one particular there has been a universal harmony ; and that is, in considering indorsements in blank on notes not negotiable, and on negotiable notes when made not by a party, but to insure the maker's responsibility, as possessing the same legal effect.

The determination in *Bradley* v. *Phelps* has recently been followed, by this Court, in *Huntington* v. *Harvey,* 4 *Conn. Rep.* 124. and in *Wilton* v. *Scott,* 4 *Conn. Rep.* 527.; and the law is very accurately laid down, in the same manner, by the late Ch. J. *Swift,* in his treatise on *Bills of Exchange and Promissory Notes,* 342. and in the first volume of his *Digest,* 431. If the maxim *stare decisis* is any thing more than a name ; if the people of this state have the privilege of certain rules of action, and are not the sport of perpetual vacillation and ruinous uncertainty ; the law of *Connecticut* concerning indorsements of notes, as before expressed, is stable and unquestionable. There are many hundreds of such contracts, now, and at all times, existing among us,—the standing and almost universal mode of guaranty,—which will be evidence of obligations new and unthought of, if the present attempt at the bar to change the construction of such engagements, shall meet with success.

That the written indorsement in question ▮▮▮ ▮▮formable to the legal import of an indorsement in bl▮▮▮ ▮ that such import does not sustain the plaintiff's declara▮▮ ▮re truths obvious and unquestionable. The defendant, by putting his name

*Windham,*
July,
1823.

Beckwith
*v.*
Angell.

on the note in question, did not guaranty the payment of it, as the indorsement declares; nor that *Ephraim Angell* should make payment of it, at the expiration of sixty or ninety days, agreeably to the averment in one of the counts; nor that at the end of the above period, he would pay the same, as another count has alleged. He merely contracted, that the plaintiffs, by the exercise of due diligence, should be able to collect it, if it were not paid at maturity.

That over the indorser's name the holder of a note cannot legally insert any contract, except that which the law imports, is necessarily implied. The point was adjudged in *Bradley* v. *Phelps*, which is, in all respects, a *fac simile* of the case before the Court. The same doctrine was explicitly stated in *Huntington* v. *Harvey* before cited; in which case, it was said, by the Court: "The holder may not write over the indorser's name a direct and absolute promise, nor insert any special contract, repugnant to the nature of a blank indorsement." 4 *Conn. Rep.* 129. To the same effect is *Welton* v. *Scott*, 4 *Conn. Rep.* 527. See also *Swift's Ev.* 142. 1 *Swift's Dig.* 434.

It has been strongly contended, that the payee may insert over the name of an indorser in blank any contract in relation to the within note. The principle is stated without proper discrimination, to be admissible any where. But upon this subject I shall not enter, as it is entirely irrelevant to the case under discussion. Let it be admitted, for the sake of argument, that such is the law of *Westminster-Hall*, of *New-York* and of *Massachusetts*. Still it was competent for this state to narrow the principle, and adopt a different law; and it has adopted it. So long as a question depends on the general common law, the determinations of courts in foreign states, who derive their rules, in common with us, from the same source, are entitled to high respect. But when, by usage, or by the decisions of our courts, we have changed the common law, and established a different rule, whether it be more or less wise, the differing determinations of other courts, are of no efficacy. This is the answer I give; and, I trust, it is conclusive as to all the adjudications and principles abroad, on the subject under discussion. We knew of the diversity; but have voluntarily created it, and established a law of our own.

It results that by the law of this state, an indorsee or payee of a note indorsed as aforesaid in blank, may not write over the indorser's name any contract, except that which the law

imports ; and that such an indorsement has not been written
in this case.

3. The indorsement of a note is a written contract, and can-
not be proved, by parol testimony, in whole or in part; and
such testimony is in direct opposition to the statute of frauds
and perjuries.

By this position, I do not intend to assert, that the filling up
of an indorsement over the name of one who has indorsed a
note in blank, according to the legal import of the transaction,
is invalid. The name itself implies the indorsement especially
written. Neither do I affirm, that an indorsement may not be in-
serted over the name of an indorser, where the law authorizes
the holder to write what he pleases. Proof of the name, in
such cases, is proof of the indorsement. But I do insist, that
the correctness of a written indorsement, cannot be proved, by
parol, either totally or partially. In this case, such proof was
offered, and was rejected.

" Contract," said a late learned Chancellor, in *Parkhurst* v.
*Van Cortlandt,* 1 *Johns. Chan. Rep.* 283. " cannot rest partly
in writing, and partly in parol." From this unquestionable
principle it is apparent, that the indorsement under discussion
not being proveable, by proof the indorser's name only, the
body of it cannot be sustained, by verbal testimony.

To the above evidence an incontrovertible objection arises
from the statute of frauds and perjuries. No contract to
charge a person for the debt of another, is valid, unless it be
in writing. *Stat.* 246. But the plaintiffs offered to prove on
the defendant an agreement by parol, to pay another's debt.

It must be borne in mind, that the note was made on the
14th of *April,* 1819 ; and that the name of the indorser was not
put on the note until the 25th of *April,* 1820. Now, a prom-
ise, to be valid, with all its conditions and limitations, might be
written at length, and signed by the party. A defective agree-
ment, to be supplied, by parol proof, would at once open a
door to perjury, and introduce all the mischiefs, which the
statute of frauds and perjuries was intended to prevent. Vid.
*Parkhurst* v. *Van Cortlandt,* 1 *Johns. Chan. Rep.* 273. and the
cases therein cited. Where *L.* wrote his name, and affixed his
seal, on the back of a lease, and it was agreed between him and
*T.,* that *C.* should write an assignment over the signature and
seal, for the absolute conveyance of the lease to *T.,* and *C.* af-
terwards wrote the assignment, and delivered the lease to *T.,*

it was held, that the affixing of the hand and seal to blank paper, was not a note in writing within the statute of frauds. *Jackson* d. *Lloyd* v. *Titus*, 2 *John*s. *Rep.* 430. " To allow," said *Kent*, Ch. J., " the subsequent filling up of the deed, by a third person, to have relation back to the time of the sealing and delivery of the blank paper, in consequence of some parol agreement of the parties, is to open a door to fraud and perjury, and to defeat the wise and salutary provisions of the statute." To the same effect was the determination of this Court, in *Huntington* v. *Harvey*, 4 *Conn. Rep.* 124. relative to the indorsement of a note in blank, which was endeavoured to be sustained by parol evidence. It is admitted, where an indorsement in blank has a legal import, or authorizes the holder to write any contract, that he pleases, over the name, that no objection arises under the statute. But if the contract might be supported, by parol testimony, it falls precisely within the law.

*Windham,*
*July,*
*1823.*

Beckwith
*v.*
Angell.

To conclude. In order to sustain their case, the plaintiffs must establish one or the other of these positions ; either that by law they may write what they please over the indorser's name, in relation to the within note ; or that they may prove, by parol, that what they have written, is conformable to the agreement of the parties. Neither of these assertions, in my opinion, is sustainable. On the other hand, the contract must receive its construction from the law of *Connecticut*, and by that law, there is a fixed legal import to a blank indorsement, which neither supports the writing in this case, nor either count in the declaration.

BRAINARD, J. was of the same opinion.

New trial to be granted.

---

## REGULÆ GENERALES :

### PASSED IN 1826.

1. In every writ of error, there shall be a special assignment of errors, and the Court will hear no other.

2. In all motions for new trial, the precise point made by the party, and the precise opinion expressed by the Court, shall appear upon the face of the motion.