RIVERS, Ex'r., *v.* THOMAS *et als.*

BILLS AND NOTES. *Past due. Endorser. Guarantor.* A person who endorses a past due note at the request of the maker, pursuant to a contract with the payee for further indulgence, is liable as guarantor.

### FROM MONTGOMERY.

Appeal from Chancery Court at Clarksville. C. W. TYLER, Sp. Ch.

GOODLETT, HOUSE and MERRITT for complainants.

LURTON, QUARLES and DANIEL for defendants.

COOPER, J., delivered the opinion of the court.

The bill is filed to hold the defendant, N. L. Thomas, liable as security or guarantor of the payment of a note, and to subject to the satisfaction of the recovery certain property conveyed by him to his son without consideration. It is conceded that the conveyance will not avail against the complainants' demand if established, and, consequently, that the court has jurisdiction of the whole case under the Code, sec. 4288.

On the 14th of February, 1859, the defendant, J. J. Thomas, executed his note under seal to the testator of the complainants, payable one day after date, for $2,337. In the month of February, 1871, one of the complainants called upon the said Thomas for payment of the note, when the latter proposed, if com-

plainants would wait on him, to give his brother, the defendant, N. L. Thomas, as "security upon the note." They, thereupon, went together to the residence of N. L. Thomas, and the said N. L. Thomas, at the request of J. J. Thomas, wrote his name on the back of the note. The testimony leaves no doubt that the object of the visit, the obtaining of additional security on the note in consideration of forbearance of suit, was explained by the debtor to his brother before the signature of the latter was endorsed, and that the endorsing brother knew he was assuming, and intended thereby to assume, whatever responsibility the act created. The complainants did forbear to sue for about a year, the maker of the note in the meantime becoming insolvent. No demand of payment of the note was made of the maker subsequent to the endorsement, nor, of course, was any notice of non-payment given to the defendant, N. L. Thomas. The words "I guarantee the payment of the within note" were afterwards written, at the instance of the complainants and by their counsel, over his name as endorsed.

It is not denied that an agreement to forbear suit for an indefinite time, which would mean a reasonable time, or an actual forbearance would constitute a sufficient consideration to sustain a promise to guarantee the payment of a note. *Tappan* v. *Campbell*, 9 Yer., 436; *Johnson* v. *Wilmarth*, 13 Met., 416; Sto. Prom. Notes, sec. 186. And the evidence shows due diligence by the complainants to collect their debt from the maker, and that the latter became insolvent before

the expiration of the reasonable time of forbearance, if these facts are at all important in determining the rights of the parties. Something was said in argument upon the point whether parol testimony was admissible to show the contract between the parties. But the decisions of this State, in accord with the weight of authority in other States, are that, as between the immediate parties, parol evidence is admissible to show the actual agreement upon which an endorsement of negotiable paper is made, and that the endorsement may be filled up accordingly. *Comparree* v. *Brockway*, 11 Hum., 360; *Iser* v. *Cohen*, 1 Baxter, 421; Dan. Neg. Instr., secs. 710, 1765; Sto. on Prom. Notes, sec. 459; *Rey* v. *Simpson*, 22 How., 341. And where the promise has arisen out of some new consideration of benefit or harm moving between the new contracting parties, it is not within the statute of frauds. *Hall* v. *Rodgers*, 7 Hum., 536; Sto. Prom. Notes, sec. 457. The note under consideration is negotiable under our statute. Code, sec. 1957. The contest is, therefore, narrowed down to the liability incurred by the endorsement, either implied by law or shown by the proof.

The decisions on the presumptive status of an irregular endorser of a negotiable note, in the absence of any evidence whatever of intent or contract, are irreconcileably in conflict. When nothing appears but the instrument itself bearing the name of a third person as endorser before the name of the payee, and the suit is by the endorsee for value before maturity, some courts treat such third person as a joint maker;

some as a surety or guarantor in the sense of joint maker; some as secondarily liable as a guarantor; and some as a second endorser. 1 Dan. Neg. Instr., sec. 713. The weight of authority is, perhaps, at this time in favor of considering him, in such case, as a second endorser. For, the Supreme Court of Massachusetts, with which court the doctrine of holding such endorser as a co-maker originated, afterwards conceded that, if the point were new, he should be treated by third parties simply as a second endorser, leaving the payee and himself to settle their respective liabilities according to their own agreement. *Union Bank* v. *Willis*, 8 Met., 504. Between the payee and such endorser the weight of authority, as we have seen, is that parol proof of the facts and circumstances which took place at the time of the transactions, and of the intention and agreement, is admissible. 1 Dan. Neg. Instr., sec. 711. And such is the settled doctrine of this State, while in the absence of such proof our courts have adopted the rule that the irregular endorser is to be treated only as a second endorser. *Comparree* v. *Brockway*, 11 Hum., 355; *Clouston* v. *Barbiere*, 4 Sneed, 336; *Brinkley* v. *Boyd*, 9 Heis., 149; *Iser* v. *Cohen*, 1 Baxter, 421. In the last of these cases, which was a suit by the payee of a note against the endorser, it was accordingly held that an endorser may, by agreement, enlarge his liability, and that it is competent, upon the trial, to show by parol evidence the nature and extent of his undertaking. The endorsement sued on was made, before the delivery of the note to the payee, for the accommodation of the maker, and

Rivers *v.* Thomas.

the evidence disclosed the fact that when the payee objected to the form of the paper, the endorser said it was the same thing as if he had signed his name on the face of the note, and he was held liable as a co-maker.

The principle of our decisions is unquestionably sound, though there may be some doubt as to the correctness of its application to the facts of one or two of the cases. In *Brinkley* v. *Boyd,* 9 Heis., 149, there was nothing to rebut the legal presumption that the defendant intended to become a second endorser. "The proof does not show," says the eminent judge who delivers the opinion of the court, "any understanding, intention, or agreement on the part of Brinkley as to the nature of the liability assumed by him in said endorsement." To the extent of the actual rulings on the facts, the decision is sustained by the general principle, although the payee of the note may have had reason to suppose, from the nature of the transaction, that the defendant intended to assume a higher grade of responsibility, or, at any rate, a responsibility to him. For it may be that the defendant was induced to endorse the note for the accommodation of the maker under the assurance that he was to be second, and not first endorser. As between the payee and the endorser, whatever may be the rights of innocent third parties, the former may well be required to know that the latter can only be made liable to him by agreement, either express or fairly implied from the conversations between them, or the facts and circumstances shown in proof.

In *Comparree* v. *Brockway*, 11 Hum., 355, it does not appear that the payee had ever had any interview with the defendant whom he was suing as endorser, nor that the witness examined was present when the endorsement was made. The witness proved that the defendant agreed to endorse the note as accommodation endorser of the maker for the payee's benefit. It does not appear that the liability of the defendant as endorser was fixed by demand and notice, and it does appear that the blank endorsement was filled up by the plaintiff's counsel by writing above it, "for valne received I promise the payment of this note to R. H. Brockway." The opinion of the court was delivered by Judge McKinney, one of the most logical reasoners and accurate thinkers of the judges who have presided in this court. The logic of his argument is, that there is no sufficient proof to sustain the endorsement as filled up, that the endorsement is consequently a blank endorsement, and the defendant might have been charged as endorser. The mode he suggests by which the defendant might have been charged as endorser is that the payee could have endorsed the note, thus making it negotiable and putting it into circulation, and at the same time taking care to restrict his own liability. This suggestion is, apparently, sanctioned by the Chancellor in the Court of Errors of New York, in *Hall* v. *Newcomb*, 7 Hill, 416. But there is a good deal of point in Senator Bockee's reply in that case to the suggestion, that "this sort of finesse and shuffling game is below the dignity of the law." And the point has been directly

ruled otherwise upon a similar case to the one Judge McKinney thought he had before him, namely a blank endorsement without more, before delivery to the payee, in *Phelps* v. *Vischer*, 50 N. Y., 66. Feeling the narrowness of his standing ground Judge McKinney, with commendable caution, concludes his opinion thus: "We go no further than to hold that a blank endorsement in a case like the present creates no other liability than that of an ordinary commercial endorsement; and that the endorser, in the absence of countervailing proof, cannot be held bound in any other or different form." In this view, the decision is in accord with the general principle recognized.

In *Clouston* v. *Barbiere*, 4 Sneed, 336, the suit was by the payee against the endorser as a joint promisor with the maker. A witness proved that the note was given for land sold by the payee to the maker, that the defendant, in the presence of the payee, agreed to go the maker's security, and, upon this consideration, the payee agreed to give up any lien on the property sold. The witness was, however, not present when the notes were given. The learned judge who delivers the opinion of the court in this case, holds that the word "security" might apply as well to an endorsement as to a liability as co-maker of the note, and as the defendant did become endorser, instead of surety on the face of the paper, he must be treated as an endorser This case, he says, "can only be regarded as a blank endorsement of commercial paper, and as such, could only be filled up with a general endorsement, leaving to the endorser all the

advantages and liabilities incident to that character, and none other or different." Conceding the correctness of this conclusion, the decision was also in accord with the principle recognized by our courts.

I am free to say that, while conceding the correctness of the law as announced in these opinions, I think it was wrongly applied to the facts of these cases. There was evidence in both of them to show knowledge on the part of the endorsers of the facts of the case, and an intention on their part to become directly bound to the payees for the price of the consideration received by the makers of the notes on the faith of the endorsements. If they could not be held liable as endorsers, and it is conceded in the first case that it could only be done by indirection, what Senator Bockee styles a "sort of finesse and shuffling game," and it seems to be taken for granted in the last case that it could not be done at all, then, upon the universally recognized maxim "*ut res magis valeat quam pereat*," they ought to have been held as guarantors or co-makers. At any rate, there was enough evidence in both cases to have gone to the jury upon the question of intent, and their verdict would doubtless have been, as it was on the first trial in the Brockway case, in favor of the plaintiffs.

The case before us differs from all of these cases we have been considering in two respects. In the first place the endorsement was made after the maturity of the note, and, therefore, the presumption of law arising from a blank endorsement at the inception of negotiable paper does not arise. In the second place

the endorsement was made in the presence of the personal representative of the payee, upon a new consideration then passing, and under such circumstances as to demonstrate that the endorser intended to become bound directly to the payee.

In his masterly summary of the liabilities created by irregular endorsements, Mr. Justice Clifford says that if the endorsement be subsequent to the making of the note, at the request of the maker, pursuant to a contract with the payee for further indulgence, the endorser is liable as guarantor. *Rey* v. *Simpson*, 22 How., 341. In Vermont the courts hold the endorser liable as a co-maker. *Strong* v. *Riker*, 16 Vermont, 554. All the other cases which I have been able to find treat such an endorser as a guarantor. *Irish* v. *Cutter*, 31 Maine, 536; *Tenney* v. *Prince*, 4 Pick., 385; *Beckwith* v. *Angell*, 6 Conn., 315; *Camden* v. *McKoy*, 3 Scam., 437; *Oakley* v. *Boorman*, 21 Wend., 588; *Greenough* v. *Smead*, 3 Ohio St., 415; Sto. Prom. Notes, secs. 133, 477; 1 Dan. Neg. Instr., 715. I find no case where he has been treated simply as an endorser. And, even if the presumption of law arising solely from the endorsement of a past due note were the same as in the case of an endorsement at the inception of the note, the facts and circumstances attending the endorsement in the present instance would remove the presumption and bring it within the authorities.

The decree of the Chancellor must be reversed with costs, and a decree entered here in accordance with this opinion.