Jones, C. J.,
delivered the opinion of the court.
This is an action of assumpsit on a promissory note by the holders, against the endorsers. The note was made by one Richard H. Arnold, for the payment of $169 89-100, to the defendant ninety days after date, and dated January 19th, 1828.
It was admitted that the name of the defendant endorsed upon the note, was not written by the defendant himself, but by Arnold, the maker. And it was alleged, that the same was so written and endorsed by Arnold, with the assent and by the authority of the defendant, and proof was offered to show the authority.
*339 One witness testified to the admission of the defendant, that he had authorized Arnold, the maker, to endorse his name upon the note, and that if it had been brought to him, he would have v - ten his name upon it himself. Some evidence was offered on .> part of the defendant tending to show that this conversation had reference to a different note: and evidence was alsoprroducetHiy the plaintiff, conducing to the conclusion that the maker had the authority of the defendant to make the endorsement. The question upon the testimony was left to the jury, who gave a verdict for the plaintiff, thereby establishing the fact, that the note was endorsed by the authority of the defendant, and the point on which the defendant now relies for his defence is, that a parol authority to endorse a note for the debt of a third person, which he affirms this to be, is void under the statute of frauds. This point was raised at the trial, and overruled by the judge, and it now comes before us on an exception to his opinion.
I state the exception in the terms of the case; but it is observable, that the facts disclosed to us do not bear out the position it assumes, that the note in question was given for the debt of a third person, within the meaning of the statute. On reference to the case, it appears that the note was drawn by Arnold in favour of Trout, the defendant, and passed by the maker with the name of Trout upon it, as endorser to the plaintiffs—for what consideration, whether in payment of an antecedent debt, or for value received upon the credit of the paper I'lcelf, at the time of the negotiation for it, does not appear. But it ic a negotiable note in the hands of an endosee, and in the absence of all proof to the contrary, must be taken to have been negotiated by the maker for value in the usual course of business, and the question will be whether payment of such a note can be successfully resisted by the defendant on the ground taken upon the argument.
In support of the objection, it is contended, I. as a general proposition, that the engagement of the endorser of a promissory note, is a collateral undertaking within the statute, to answer for the debt of another, and to be obligatory, must be in writing.
*340 II. That the authority of an agent to endorse for his principal must also be in writing, as a parol authority would introduce the very mischief against which the statute is intended to provide.
III. If such parol authority is good, it can only be so when given to a third person, who is not to be benefitted by the exercise of the power; and from these premises the conclusion is drawn, that the authority in this case being by parol and to the person, whose debt the endorsement guaranteed, that authority was invalid.
I cannot accede to the views taken by the defendant’s counsel of the nature of the endorser’s engagement, nor to, the opinion, that the authority to endorse the note was void, because it was by parol. The only engagement of the endorser is for the payment of the note he endorses; and when he is the payee, (as, in the regular course of negotiating, the first endorser generally is,) the note is payable to himself, and is his own debt. When he transfers it to another by endorsement he assigns or passes over to his endorser the note or debt thus due, and payable to himself; and the legal effect of his endorsement is to superadd his own personal obligation as endorser for the payment of the note to the endorsee.
This is the process and legal operation of the transfer of the note by endorsement as between the maker, the payee and the endorsee of the note. And to this pure unmixed case of the note of a maker to a payee and endorsed by the payee to an en- . dorsee, who continues as the holder, we must look for the true nature and legal effect of the engagement of the endorser. In it no feature of an undertaking of the endorser to answer the debt of a third person within the meaning of the statute for the prevention of frauds, is discernable. It is the transfer in such cases permitted by law, of the debt (which the note makes payable to him,)by him to the transferee ; and the obligation the endorsement creates is, that the debt thus transferred by him to the endorsee, in case of the non-payment of the maker at the maturity of the note upon demand, shall upon due notice of the maker’s default be paid by him (the endorser) to the holder. There is no debt due, or owing, or about to be contracted by the maker of the note to the endorsee, for which the payee thus gives his en« *341 dorsement. The first connection the endorsee has with the note is the negotiation and transfer of it to him, for the value he then ,o pays for it: and that value he gives for the endorsed note, as he receives it with all the engagements and liabilities of the parties to it—as well endorser as maker—for the payment of its contents.
Such was in effect the negotiation of this note to these plaintiffs. They received the note, it is true, from the maker, and not from the payee. But the payee having made the maker his agent for the negotiation of the paper with his endorsement upon it, the negotiation of it by the agent was the same as respects the defendant—his constituent, as if he had conducted the negotiation himself in person. Or, if the circumstance differs, the case it makes is still stronger against the defendant. It is in evidence that the note was endorsed by the defendant for the accommodation of Arnold the maker, by Arnold himself, as the agent of the defendant, and was negotiated with the name of the defendant upon it as endorser, by Arnold to the plaintiffs for his own benefit. The negotiation was necessarily of the entire endorsed note, for a consideration to the maker. The delivery of the note to, the plaintiffs gave it no vitality as operative negotiable paper. The only aliment for the promise of the maker, or the engagement of the endorser, was the consideration paid for the note by the plaintiffs. And the endorsement was, under such circumstances, emphatically an original engagement of the defendant, as endorser to the plaintiffs, for the payment of the contents of the note.
The case of Ulen v. Kittridge, 7 Mass. 233. was that of a guaranty by the defendant of his promissory notes, made by one Eliphalet Butman, for one hundred dollars each, payable to Alen or order. The plaintiff declared upon the guaranty, and averred, that in consideration of his forbearance (by his agent) to sue until his return from sea, the defendant promised to guaranty the payment of the notes. It appeared in evidence, that the notes had been left in the hands of an agent for collection during the plaintiff’s absence at sea; that after many fruitless applications to Butman (the maker) for payment, he was notified that the notes would be put in suit, unless they were paid, or the payment of them secured : that Butman and the defendant thereupon went together to the *342 agent, when Butman offered the defendant as surety, and the defendant consented to become security for the money, on condition, that the agent would forbear to sue Butman, the maker, on the note, until the plaintiff’s return from sea. To this condition the agent acceded, and the defendant, for the purpose of the intended security, endorsed the notes. This, then, was a plain case of a guaranty or collateral undertaking of Kittridge, the defendant, to answer for the antecedent and subsisting debt-of Butman, for the consideration of the forbearance of that debt by the plaintiff, who was absent at the time, until his return from sea. It has no resemblance to the case now before us, which is purely the case of the' transfer of negotiable paper to the plaintiffs for value, in the usual course of dealing, by endorsement.
. The rule is too well settled to be now shaken, that a negotiable promissory note like the present,, in the hands of an innocent holder, who takes it in the usual course of negotiation, for a valuable consideration, without notice of any equity or secret trust to it, is obligatory and conclusive upon all the parties, whose names appear upon the paper, and cannot be affected by any of the considerations which belong to collateral engagements for the debts of third persons. Nor can the facts or circumstances (necessary to be shown for those considerations to arise) be inquired into or shown by the endorser in his defence against his endorsement.
But if the engagement of this defendant could be brought within the statute, its obligation could not for that reason be avoided; for it is in writing, and the sufficiency of the writing has not been drawn in question. The only view in which the application of the statute to the endorsement could be material, is the bearing it may be supposed to have upon the second point, which' predicates of an authority to endorse, that, it must be in writing, because the statute is supposed to require the endorsement itself to be in writing, and a parol authority to endorse would introduce the very mischief, against which the statute was intended to provide. But if the engagement of the endorser is not within the act, if the endorsement of the payee of a negotiable promissory note, (passed in the course of negotiation to an endorsee in good *343 faith, and for a fair and valuable consideration,) is in judgment of law an original undertaking to which the provisions of the statute have no application, it must follow, that the special grounds insisted upon by the counsel (in the second point) for requiring the authority of the agent to endorse for his principal, to be in writing, (deduced from the provisions or policy of the statute,) must fail him, and the question will stand upon the general principles of law and commercial usage, applicable to the relation of principa land agent.
Tested by these rules, can there he a serious doubt on the point? In an anonymous case in 12 Mod. R. 564. it was expressly ruled by Lord Chief Justice Holt, that an authority to ci'CMjrse a bill of exchange, in another person’s name, may be by Kviol. This rule has often been recognized by judicial opinions, and its soundness has never, I believe, been questioned. But the principle of the rule is admitted. It is conceded, that the delegation by one person to another, of the power of contracting for him, and of signing the name of the constituent to the contract, may be by parol, except in cases to which the statute for the prevention of frauds is held to apply. If I am right in the views I have preeented of the case, that exception, if admitted, would be of no avail to the defendants. But I am not able to discover any solid ground for the exception. And whether the engagement of an. endorser is to be deemed an original undertaking to the endorsee, for a debt or responsibility of his own, or a collateral engagement to answer for the debt of the maker, and as such (within the statute) a parol authority from the endorser to the maker to endorse the note for him, would in either case be valid in law, and sufficient to charge the constituent with a liability as endorser of the note, however desirable it might be, that the authority of an agent, who acts for the principal in cases which fall within the statute, should be in writing. The 11th section of the statute, which relates to collateral undertakings for the debts of third persons, does not require it, and the uniform construction of the courts has been, that the power of the agent in such cases may be by parol.
In the case of Clinan v. Cooke, [1 Sch. & Lef. p. 22.] the leading question Was upon the sufficiency of a parol authority to enable the agent to bind his principal by an agreement *344 for a lease, and the counsel for the defendant strenuously contended against its sufficiency, insisting that where an authority is given to another to enter into a contract of this description, it must bein writing. But the Chancellor observed, that there was no foundation for that position; that the words of the statute of frauds do not import any such thing, and that there are decided cases to the contrary. He referred to a case as a precise determination in point, which he said was decided in perfect conformity to the statute.
The case referred ’to by the Chancellor was that of Barry v. Lord Barrymore, before Lord Lifford, in Chancery, Michaelmas term, 1770, cited by counsel as furnished by Mr. Fitzgerald, from Mr. Malone’s Notes. In that case, the bill was for the specific execution of an agreement for a lease made by one Underwood, the agent of the defendant. The defendant put in a plea under the statute of frauds to this effect, that the defendant did not put in writing any contract or agreement for making the lease mentioned in thebill, nor lawfully authorise in writing Underwood or any other person as agent for him to make or sign any agreement in writing for any of the lands in the bill, or any memorandum or note for making any lease, otherwise than as the defendant had set forth. The Chancellor held the plea to be evidently bad, because the defendant said that he did not authorize “ in writing;” he held, that the statute does not require the authority to be in writing, and therefore the defendant was not within the statute.
The earlier case of Walker v. Hendon and Cox, [5 Vin. 524. Pl. 45. is to the same point. It was an appeal from the Rolls, in 10th Geo. I. (1724.) The case was, that Hendon, as agent for Cox, entered into a contract in writing with the plaintiff for the purchase of a college-lease, and the bill was against both the principal and agent for a balance due of the purchase money. The decree at the "Rolls was against both to pay the money, and in case Hendon should pay it, then he to be at liberty to prosecute the decree in the name of the plaintiff against the other defendant Cox, who was the principal. Cox appealed, for that he did not give any authority in writing to the defendant Hendon to buy the lease for him, and therefore, by the statute of frauds, he ought not to be held by the contract. But Macclesfield, Chancellor, af *345 firmed the decree, holding that the authority to treat or buy for him, may be good without writing, though the contract itself must be in writing by the statute. The case of Mortlock v. Buller, [10th Vesey, 292.] and Deverell v. Lord Bolton, [l8th Vesey, 505,]citedby the defendant, are both cases of agreements of agents acting under a parol authority of the principals. They show that the agent must be fully and clearly empowered to bind the principal by the. contract, and must keep strictly within the line of his authority: but the Chancellor, in each case, distinctly recognizes and admits the rule that the authority may be by parol, though the agreement must be in writing. In the case of Clinan v. Cooke, before referred to, the question was fully considered in all its bearings, and received an unqualified determination, which fully settled the competency of a parol authority to enable the agent to bind his principal by his contract, and the obiter opinions of the two judges in the only case in which a contrary doctrine appears to have been advanced, were exploded and overruled.
In the case of Ulen v. Kittridge, [7 Mass. Rep. p. 233,] as we" have already seen, the defendant became'the guarantee for the payment of two promisory notes given by one Pitman to the plaintiff, by writing the name of him, the defendant, upon them after they had fallen due upon the consideration of the forbearance of the plaintiff to sue the maker upon them. It was objected that the indorsement or guaranty of the defendant being an undertaking to pay the debt of another, he could not be charged upon the promise because there was no consideration for the guaranty or agreement expressed in writing. To which it was answered, that the forbearance to sue was a valid consideration, and was sufficiently expressed in the agreement, and would be considered at the trial as if written over the defendant’s name, by the witness as his agent, authorized thereto by parol. And the court held, that the defendants signature upon the back of the note was the authority given by him to write over the signature a sufficient guaranty, and such guaranty being accordingly written pursuant to the authority, might be considered as a memorandum signed by the party, within the intent of the statute, as fully as if it bad been written in the, defendants presence, immediately after the sigtia *346 ture, and that a parol authority to the agent to fill up the blanks was sufficient in law, and parol evidence was admissible to prove such parol authority.
In the case of Merritt against Clason, [12 John. R. p. 102.,] it was conceded by the counsel, and assumed by the court, that the authorization of the agent under this section of the act, need not be in .writing. In that case, Townsend the broker, who was held, to be the agent of both parties, acted under a parol authority solely, and the sufficiency of his authority to bind the parties by his memorandum in writing, of the agreemeat was expressly admitted. In the case oí Coles v. Trecothick, [9 Ves. p. 249.,] and other equity cases, a written authorization of the agent to write out the contract for the principal, was held unnecessary, and this rule was recognized and sanctioned by the English Court of Common Pleas, in the case of Emmerson v. Heelis, [2Taunt. p. 46.,] and by Chancellor Kent in the Court of Chancery of this state, in the case of McComb v. Dwight, [4 John. Ch. Rep. p. 659.] In commenting on the case from Taunton, the Chancellor approves of the conclusion of the Court of Common Pleas, that the auctioneer is an agent .of the purchaser, and a contract signed by such agent is binding, and that an agent for the buyer need not be authorized in writing. The same rule of constructioi^must apply to the authority of an agent by whom the principal contracts,"and’ becomes answerable for the debt of another, which comes within the same section of the act.
These precedents exhibit a clear, strong and uniform current of judicial opinion for more than a century, in the English Court; and of those of this state, since its organization as such, in favour of the sufficiency of the parol authority of the agent to sign for his|pfincipal; and we cannot against such an unbroken series of decisions in support of it hold it invalid.
The remaining objection to the validity of the authorization in the present case, because it is given to the maker of the note, whose debt was to be guaranteed, is clearly untenable. The interest of the party in the endorsement does not disqualify him for the agency, if the principal is willing to trust him with the powers *347 it confers. It was the intention and design of the defendant to lend the maker of the note the use of his name, as endorser of his paper, and it was but the further proof of his confidence in him, to confer on him the authority to make the endorsement. The agent at the same time he bound him as endorser, must bind himself as maker of the note, and thereby oblige himself to reimburse to the principal the money he might be compelled to pay for him as endorser. And the principal if he confided in the integrity and the solvency of the person he intended to befriend, might be willing to commit to him the charge of showing the extent of the liability. The interest of the maker of the note in the endorsment, and the temptation he would be under to abuse the power, if allowed to prove it, would be a strong objection, and perhaps conclusive against his competency as a witness to establish his authority to endorse. But in this case, his authority is proved by other testimony, and he is not called to establish it by his own oath. I see no solid reason against his capacity to act as agent under either a written or a parol authority. His interest in the endorsement cannot disable him, for the debt created by the indorsement continues against him as maker; and his authority is conferred upon him by the party himself, who alone is to suffer by the act.
The cases cited by the counsel to this point have no application. The case of Wright v. Wardle, [2 Camp. p. 200.,] was an action for the price of furniture supplied the witness, at the request, and on the credit of the defendant. The witness to whom the goods were furnished, and who was then the owner of them, was called to prove that the credit was given to the defendant, and it was objected, that she was not a competent witness without a release, as the goods were furnished to her, and she was prima fade liable for them, and hada direct interest to fix the liability on another. She was on that ground rejected.
Another point was made by the plaintiff on the argument which it may be proper to notice. It was contended that the subsequent assent of the defendant to the endorsement, and his promise to pay the note was a waiver of any exception that otherwise might have been taken to the sufficiency of the authority to endorse; and the cases from 2 Camp. p. 450., and 5 Esp.p. 180., were cited *348 in support of the proposition. I incline to the opinion that this case comes within the principles of those cited by the counsel, and that the defendant ought upon principle as well as precedent, to be precluded from the benefit of a defence which appears from his own admission, not to be very meritorious, and which he so clearly appears to have waived. But my opinion being in favour of the plaintiffs upon the other points of the cause,, it will not be necessary to enter more fully into the consideration of this; therefore, the motion for a new trial must be denied.
Motion denied.
[W. H. Bell, AWyforplff. E. Anthon, AWy for deft. J
IfftTB;—Vide Shaw v. Jfndd, 8 Pick. Pep. 9.