PERKINS *against* CATLIN.

The contract which the law *prima facie* implies from a blank indorsement of a promissory note not negotiable, is, that the note is due and payable according to its tenor, that the maker shall be able to pay it, when it comes to maturity, and that it is collectible, by the use of due diligence.

The indorsement in blank of a negotiable note, by a third person, for the better security of the payee, *prima facie* imports the same contract as the blank indorsement of a note not negotiable.

But a blank indorsement is only *prima facie* evidence of such contract; and it is competent, as between the parties to the indorsement, to prove, by parol evidence, the agreement which was in fact made, at the time of the indorsement.

Such evidence is not exceptionable, either as contravening the legal import of the indorsement, or controuling a writing, or as being in opposition to the statute of frauds and perjuries.

THIS was an action of *assumpsit*, founded on a promissory note of the following tenor: "On the third day of *April* next,

we, or either of us, promise to pay *Dennis Perkins*, or bearer, one hundred and eighty dollars; value received.    *Sept.* 21, 1833.                                 *Lewis Catlin, jun.*
                                              *Lewis Catlin.*"

On the back of this note was the name of " *Abijah Catlin*," the defendant.

The declaration contained three counts. In the first, the defendant was charged as a joint and several promiser with *Lewis Catlin*, and *Lewis Catlin* jr., of a negotiable note.

In the second, the plaintiff alleged, that he held a note against the said *Catlins*, which was due, and in consideration that the plaintiff, at the request of the said *Catlins* and the defendant, would delay and postpone the payment of the money due thereon, and give up said note, the said *Catlins* agreed to execute and deliver to him the note in suit; and that the defendant should and would guarantee the payment thereof, when it should fall due ;—that for this consideration, the note in suit was made and delivered, and the defendant, for the like consideration, indorsed the note in writing under his hand, and thereby assumed, promised and guaranteed to the plaintiff, that the said *Catlins* should be of sufficient ability to pay, and should pay the same when it fell due, or that the defendant would pay the same when thereto requested. It then averred the bankruptcy of the *Catlins*, at the time when the note became due, their failure to pay, and demand and notice.

In the third count, the same facts substantially, are averred as in the second, and the contract of the defendant is thus stated : In consideration of the premises, the defendant indorsed the note, in writing under his hand, and did thereby assume and promise, and guarantee to the plaintiff, that the said *Catlins* should and would be of sufficient ability to pay the note, and should and would pay it, when it fell due, or that the defendant would pay it, when requested,—averring the bankruptcy of the *Catlins*, their failure to pay, and notice to the defendant.

The cause was tried at *Litchfield*, *August* term, 1835, before *Waite*, J.

On the trial, the plaintiff, in support of *all* the counts, exhibited a negotiable note, signed by *Lewis Catlin* jr. and *Lewis Catlin*, payable to the plaintiff or bearer, with the name of the

defendant, indorsed by him, in blank, on the back of the note. Objection was made to the admission of the note in evidence, on the ground that it did not support the allegations in either count in the declaration; and the court rejected it. The plaintiff then offered, in support of the *first* count, the note, accompanied with parol proof that it was executed, and by the defendant indorsed, upon the consideration stated in the second and third counts, and afterwards, delivered to the plaintiff. A similar objection was taken to this evidence, which was sustained by the court, and the evidence excluded. The plaintiff then offered, in support of the *second* and *third* counts, the note and the before-mentioned parol evidence, together with further parol evidence, tending to show, that the defendant, at the time of indorsing the note, did, in fact, assume, promise, and guarantee the payment thereof, in the manner set forth in the second and third counts; and that such was the understanding of the parties: and claimed, that as the indorsement was in blank, the plaintiff had a right to write over it, such an agreement as he pleased, or, at any rate, such an agreement as was actually made; but no evidence was offered by the plaintiff, that the defendant ever gave the plaintiff any authority to fill up the indorsement, other than what was implied from the indorsement itself. The defendant objected to the admission of this evidence, on the ground that the legal import of the indorsement could not be varied, by parol testimony; and the court held, that the evidence was inadmissible. No other evidence having been offered, the jury returned a verdict for the defendant. The plaintiff thereupon moved for a new trial, on account of the rejection of this evidence.

*P. Miner,* in support of the motion, contended, 1. That the writing in question may be declared on against the defendant, and treated as a promissory note made by him. *Palmer* v. *Grant,* 4 *Conn. Rep.* 389. *Hunt,* admr. v. *Adams,* 5 *Mass. Rep.* 358. *White* v. *Howland,* 9 *Mass. Rep.* 314. *Moies* v. *Bird,* 11 *Mass. Rep.* 436. *Josselyn* v. *Ames,* 3 *Mass. Rep.* 274. *Upham* v. *Prince,* 12 *Mass. Rep.* 14. *Nelson* v. *Dubois,* 13 *Johns. Rep.* 175.

2. That if the defendant cannot be treated as a promiser in the note, his indorsement amounts to a guaranty, or a promise to pay the note at all events, if the promiser fail to pay at the

day; and no demand or notice is necessary. *Upham* v. *Prince,* 12 *Mass. Rep.* 14. *Herrick* v. *Carman,* 12 *Johns. Rep.* 159. 161. *Campbell* v. *Butler,* 14 *Johns. Rep.* 349. *Allen* v. *Rightmere,* 20 *Johns. Rep.* 365. *Tillman* v. *Wheeler,* 17 *Johns. Rep.* 326. *Beckwith* v. *Angell,* 6 *Conn. Rep.* 315. *Palmer* v. *Grant,* 4 *Conn. Rep.* 389. *Sage* v. *Wilcox,* 6 *Conn. Rep.* 81. *Wylie* v. *Lewis,* 7 *Conn. Rep.* 301. *Tenney* v. *Prince,* 4 *Pick.* 385. Where the guaranty or engagement is absolute, there is no need of a demand or notice. *Breed* v. *Hillhouse,* 5 *Conn. Rep.* 523. *Williams* v. *Granger,* 4 *Day,* 444. *Tillman* v. *Wheeler,* 17 *Johns. Rep.* 326.

3. That where the indorsement on a note like this, is in blank, parol evidence is admissible to prove what the real contract was. *Swift's Ev.* 342, 3. 1 *Sw. Dig.* 434. *Herrick* v. *Carman,* 10 *Johns. Rep.* 224. *Barker* v. *Prentiss,* 6 *Mass. Rep.* 430. *Josselyn* v. *Ames,* 3 *Mass. Rep.* 274. *Nelson* v. *Dubois,* 13 *Johns. Rep.* 175. *Campbell* v. *Butler,* 14 *Johns. Rep.* 349.

4. That where a note is indorsed in blank, the indorsement itself, not filled up, will have the same effect and legal operation, as it would have, if filled up. 1 *Sw. Dig.* 434. *Sw. Ev.* 342. *Herrick* v. *Carman,* 12 *Johns. Rep.* 159. 161. The signing or indorsing of a note in blank, gives the holder a right to fill it up, in any manner which the nature of the transaction indicates. *Russell* v. *Langstaffe, Doug.* 514. *Collis* & al. v. *Emett,* 1 *H. Bla.* 313. 6 *East* 20. n. (*a.*) *Mitchell* v. *Culver,* 7 *Cowen,* 336. n.

*Holabird* and *Woodruff,* contra, contended, 1. That the note alone, unconnected with any parol evidence, was inadmissible in support of either count of the declaration, because the contract implied by law from such indorsement, is not the contract set up in either count. The promises alleged, are all *absolute* promises to pay; but the contract implied by law, is that the note is due, that the makers shall be able to pay, and that it shall be collectible, by the use of due diligence. *Bradley* v. *Phelps,* 2 *Root,* 325. 327. *Huntington* v. *Harvey,* 4 *Conn. Rep.* 124. 129. *Welton* v. *Scott,* 4 *Conn. Rep.* 527. 532. *Prentiss* v. *Danielson,* 5 *Conn. Rep.* 175. 179. Whenever a person has been treated as a guarantor, something more than the name in blank has been written, which unequivocal-

ly shewed the character of the transaction. *Lamoureiux* v. *Hewitt*, 5 *Wend.* 307. *Jackson* v. *Richards*, 2 *Caines* 343. *Hall* v. *Rand*, 8 *Conn. Rep.* 560. *Breed* v. *Hillhouse*, 7 *Conn. Rep.* 533. *Terrill* v. *Smith*, 8 *Conn. Rep.* 426. *Bulkley* v. *Landon* & al. 3 *Conn. Rep.* 76. *Deming* v. *Norton, Kirby* 397. The case of *Wylie* v. *Lewis*, 7 *Conn. Rep.* 301. does not conflict with the view of the law here taken. The court decided only, that the contract alleged and the consideration set forth were not implied by the blank indorsement. The question, what contract was implied, did not arise, and was not decided by the court, in that case.

2. That the legal import of a blank indorsement cannot be varied, by parol evidence ; and consequently, the parol evidence offered in connexion with the note, to shew what the promise was, was inadmissible.

In the first place, this evidence is precluded, by the statute of frauds. The promise is collateral—to pay the debt of another, in a certain event. The statute of frauds requires such a promise to be *in writing* and *signed*. When the law implies a certain contract from writing the name merely, the statute does not apply. The name by itself is then a certain, known, and definite contract. But in other cases, the mere signature of the name furnishes no such proof. If you may prove the contract by parol, you may say, in the face of the statute, that the contract need not be in writing. What the real contract was, is uncertain ; and the admission of parol evidence lets in all the evils against which the statute was intended to guard.

But secondly, aside from the statute of frauds, the whole course of decisions in *Connecticut*, is opposed to the admission of such evidence. The holder of a note not negotiable, may not write over the blank indorsement an absolute promise, nor any special contract repugnant to the nature of the undertaking which the law implies. *Bradley* v. *Phelps*, 2 *Root* 327. *Huntington* v. *Harvey*, 4 *Conn. Rep.* 129. *Palmer* v. *Grant*, 4 *Conn. Rep.* 399. *Welton* v. *Scott*, 4 *Conn. Rep.* 532. 1 *Sw. Dig.* 434. *Sw. Ev.* 342. 1 *N. Hamp. Rep.* 284· The case of *Beckwith* v. *Angell*, 6 *Conn. Rep.* 315. cannot be considered as establishing a contrary doctrine. It was decided by a divided court. The contract was made in *Rhode-Island*, and one of the majority of the court assented to the decision on

the ground of the *lex loci*. The *Massachusetts* and *New-York* decisions have never been recognised as law in *Connecticut.*

Thirdly, the parol evidence was inadmissible, because though there might have been previous conversations between the parties tending to prove the contract alleged ; yet as it appears, that the defendant never gave the plaintiff any authority to vary the legal import of the indorsement, he must have meant to be bound only according to its legal import. All was merged in the *written* indorsement ; and because their final agreement was reduced to writing, the written evidence must decide what the contract really was. It cannot be varied, by parol evidence.

HUNTINGTON, J.    The record presents two questions for our decision.    1. What is the contract, implied by law, in a blank indorsement of a negotiable note, made by a stranger to the note, for the benefit of the payee, to insure the maker's responsibility, in cases where there is no other proof of the contract, except such as arises from the indorsement itself ?    2. Is parol evidence admissible, as between the indorser and payee, to prove the contract which was in fact made, at the time of the indorsement, and which such blank indorsement was intended, by the parties, to consummate?

We had supposed the first of these questions had long since received an answer, by repeated adjudications of this court.  At an early period of our judicial history, we find, that the legal nature and effect of a blank indorsement of a note not negotiable, became a subject of investigation and decision.  It was always the law *in this state*, that such an indorsement, *prima facie*, implies a contract on the part of the indorser, that the note is due, that the maker shall be of ability to pay it when it comes to maturity, and that it is collectible by the use of due diligence.  On this point, the decisions have been uniform in *Connecticut.*  And if it be said, that such construction of a blank indorsement is *peculiar* to this state, it is not the less definitely and judicially settled, because it is confined to our own jurisdiction.  We have always rejected the doctrine that such an indorsement constitutes the indorser a joint maker of the note, or an absolute guarantor, creating a liability at all events, on the dishonour of the note by the maker, or a second indorser of the note, and liable only to the subsequent parties

to it. Whatever views of this subject may have been entertained, by the courts of other states, the judicial decisions of our own courts have given to such an indorsement, an unquestionable signification and legal meaning, which no power, except that which makes law, can alter. We are not at liberty, therefore, to consult the adjudications of other judicial tribunals, however enlightened, to aid us in ascertaining what is *our* law, as applied to this subject. Were the reasons on which it is founded, less obvious and just than we think they are, all enquiry into them, we consider to have been long since closed, by repeated and solemn decisions of the court of dernier resort in this state. If the maxim, *stare decisis*, is worthy a place in our code, and is ever to have an application, the present would seem to be a most fitting occasion on which to apply it. A reference to a few of the authorities applicable to this subject, may not be inappropriate, inasmuch as the point which they profess to settle and put at rest, is again presented for our consideration.

The late Ch. Justice *Swift*, in his treatise on *Bills of Exchange and Promissory Notes*, published in 1810, *p.* 342. makes the following remarks : A blank indorsement contains a warranty that the note is due and valid according to the terms of it, that it is collectible with the use of due diligence, and that the maker is of sufficient ability to pay it. In his *Digest*, published in 1822, *vol.* 1. *p.* 434. he says, an indorsement in blank contains a warranty the note is due and collectible with the use of due diligence, and that the maker is of ability to pay it. In the case of *Bradley* v. *Phelps*, 2 *Root* 325. decided in 1796, it was held, by the superior court, that in ordinary cases, the indorser of a note undertakes that the money shall be obtained from the promiser, when it falls due, by the indorsee, he using due diligence and taking the remedies which the law has provided ; but if the indorsee suffers it to lie, without taking any legal steps to secure or recover it, the indorser will be exonerated in case of a loss, unless the promiser was absolutely a bankrupt, when the note fell due. In *Williams* v. *Granger*, 4 *Day*, 444. decided in 1810, this court said, that an indorsement in common form, is a warranty that the note is due and collectible, by using due diligence. In *Huntington* v. *Harvey*, 4 *Conn. Rep.* 124. decided in 1821, we said, by uniform and long continued usage in this state, as well as by re-

peated determinations, a blank indorsement on a note not negotiable, contains a warranty that the note is due, that the maker shall be of ability to pay it when it reaches maturity, and that it shall be collectible by the use of due diligence. In *Welton* v. *Scott,* 4 *Conn. Rep.* 527. decided in 1823, we adhered to the previous decisions, and in the fullest manner confirmed them. The subject was much considered, and we declared, that by usage for a long period, perhaps immemorial, and by frequent adjudications, the nature of such a blank indorsement has been clearly and definitely established. The court intended to put at rest, if possible, all future controversy relative to the nature of such a contract. In *Prentiss* v. *Danielson,* 5 *Conn. Rep.* 175. also decided in 1823, we again repeated, that an indorsement of a note not negotiable, contains a warranty that the maker is of ability to pay it, and that it is collectible by the use of due diligence.

In the argument, our attention was called to two cases, decided by this court, which were supposed to establish the doctrine that a blank indorsement of a note not negotiable, by a stranger, is an absolute guaranty that the note shall be paid at maturity, and that on failure of such payment, the assignee has an immediate right of action against the indorser, in all cases and under all circumstances.

One of these cases is *Beckwith* v. *Angell,* 6 *Conn. Rep.* 315. decided in 1823. On examining this case, we find no such point decided by the court. The controversy between the parties was confined to the question whether parol evidence was admissible to show that the indorsee agreed to become an absolute guarantor, and that the indorsement in blank was made in pursuance of, and to carry into effect that special agreement. It is true, the Judge who gave the opinion of a majority of the court, said, that "had the indorsement remained blank, it must have been considered, *prima facie,* a guaranty or nothing." In what sense he intended to use the word "guaranty," is not, perhaps, entirely obvious. If he meant nothing more than that the blank indorsement was a guaranty that the note should be collectible by the use of due diligence, it was a mere substitution of the term guaranty, for the term *warranty.* This is in accordance with the fair import of the language used; and is presumed to have been his meaning, especially when taken in connexion with what was

known by him, as well as the rest of the court, to be an established rule in this state, that such a blank indorsement does not, *prima facie*, import an absolute promise to pay, on the dishonour of the note.

The other case referred to, is *Wylie* v. *Lewis,* 7 *Conn. Rep.* 301. decided in 1828. In that case, the note was negotiable, and was indorsed by the defendant in blank, while in the hands of the payee, on a sufficient consideration, and as additional security to the payee. The only point decided by the court, or intended to be decided, was one which required the same decision, whether the indorsement implied an absolute, or a conditional promise. The judge who gave the reasons, does indeed say, that "the legal import of this indorsement, is an absolute engagement to pay at all events." This, however, was, at most, a mere *obiter dictum,* not necessary for the decision of the case; for he adds, "whether it imports an absolute, or a conditional engagement, it certainly does not imply the consideration and contract stated in the declaration." We cannot suppose this court intended, in this short summary manner, and in a case not requiring it, to overthrow an usage almost coeval with the establishment of our judicial system, and sustained by numerous adjudications of the highest authority.

We were also referred, by the plaintiff, to a case decided by this court, which, it was supposed, at least by implication, recognized as the law of this state, the doctrine that such a blank indorsement constitutes the indorser a maker of the note, though in the character of a surety, and that the indorsement may be declared on, in the same manner as a declaration is framed against the maker of a note. The case cited is *Palmer* v. *Grant,* 4 *Conn. Rep.* 389. decided in 1822. It, however, furnishes no support for the position which is advanced. It merely decided, where all the parties to the note were described in the body of it, thus, " We *Grant & Wattles* as principals, and *Daniel Carr* and *William Grant,* surety, promise to pay *Cyrus Palmer,* or order, sixty-two dollars, with interest, value received"—that all the persons so named were joint promisers, although the sureties affixed their signatures, not in the usual place at the bottom of the note, but on the back of it. The only question discussed or decided, was, whether the mere fact that the sureties put their names on the back of the note, constituted them indorsers; or whether they, as well as the princi-

pals, were not original parties to the contract. A majority of the court held, that in the case before them, the defendants shared in the value received, and placed their names on the back of the note, when it was made, describing themselves as sureties and joint promisers with their principal ;—that the writing, on the face of it, imported one original entire transaction, and the value received was evidence of a consideration embracing the defendants and their principals. This decision did not profess to introduce into our system, any new rule relating to the legal nature of blank indorsements, in ordinary cases, but simply to declare, that under the circumstances of the case before the court, the defendants were not indorsers, but joint promisers :—and, therefore, in two subsequent cases decided the following year, the case of *Palmer* v. *Grant*, is not mentioned as contravening what was understood, by the court, to be the well established doctrine in reference to these blank indorsements.

After such a long usage, and with so many uniform decisions of this court before us, we again confirm them; and, in the hope that this fruitful topic of professional disputation will be treated as one not open to discussion, we repeat, that, by the common law of *Connecticut*, a blank indorsement of a note not negotiable, *prima facie*, implies a contract on the part of the indorser, that the note is due and payable according to its tenor, that the maker shall be of ability to pay it when it comes to maturity, and that it is collectible by the use of due diligence. "If" (as was said, by a former Chief Justice of this court,) "the maxim *stare decisis* is any thing more than a name; if the people of this state have the privilege of certain rules of action, and are not the sport of perpetual vacillation and ruinous uncertainty, the law of *Connecticut* concerning indorsements of notes before expressed, is stable and unquestionable."

We improve the present occasion to repeat what this court has, in several cases, heretofore held as the obligation imposed on the holder of a note with such an indorsement, in order to subject the indorser.

As a general rule, he is required to pursue, with diligence, the proper legal measures for the recovery of the debt. This, however, is not required, if the maker, when the note comes to maturity, is insolvent, without property to pay it; and more than this, he may be obliged to perform, when he enters into a special contract to do more. If the maker is solvent, the hold-

er is bound, as soon as the note is due, to pray out a writ of attachment and deliver it to an officer, whose duty it is, to attach personal property sufficient to satisfy the damages which may be recovered in the suit, for which purpose, he is bound to make all reasonable search. He is not required to attach the real estate of the debtor, nor personal property, if, by diligent search, he cannot find an amount of the latter sufficient to pay the damages; but if the debtor is possessed of other than real estate insufficient to pay the debt, or of real estate, it is the duty of the assignee to attach the body of the debtor, without any unreasonable delay, that thus payment of the debt may be coerced.

We have, thus far, confined our remarks to indorsements of notes not negotiable. In the present case, the note in suit is a negotiable note, indorsed in blank, by the defendant, a stranger to the note, for the benefit of the payee, and not indorsed by the latter. Does our law regard such an indorsement, as subject to the same legal construction, and as imposing upon the payee, the same legal diligence, as if the note were not negotiable? We think it does so regard it; and that, in *Connecticut,* the indorsement in blank of a negotiable note, by a third person, for the better security of the payee, *prima facie,* imports the same contract as the blank indorsement of a note not negotiable. Until the year 1811, promissory notes were not negotiable in this state according to the custom of merchants. In that year, a statute was enacted, making all promissory notes, duly executed, to the amount of thirty-five dollars, or more, for the payment of money only, and made payable to any person or persons, or his, or her or their order, or to the bearer, assignable and negotiable according to the custom of merchants, and the law relating to inland bills of exchange. Since that time, numerous decisions have been made, in which it seems to have been assumed, by the court, as undoubted law, that these blank indorsements of the description mentioned, were subject to the operation of one uniform rule. Indeed, in some of the cases, the notes were negotiable, and the previously well settled doctrine relating to indorsements of notes not negotiable, were applied to them. There can be, we think, no distinction properly made between them, in this particular: and we give our sanction to the doctrine stated by the late Ch. J. *Hosmer,* in the case of *Beckwith* v. *Angell,* 6 *Conn. Rep.* 323, 4. (although we differ from him on other points which

arose in that case)—" The law of *Connecticut* giving a construction to indorsements in blank on promissory notes not negotiable, and on negotiable notes by one not a party to them, in order to warrant the maker's responsibility, has long been settled: and however the courts in the contiguous states, have differed from us in the construction of the contract implied in such indorsement, yet in one particular, there has been a universal harmony ; and that is, in considering indorsements in blank, on notes not negotiable, and on negotiable notes when made not by a party, but to insure the maker's responsibility, as possessing the same legal effect.    We adhere to the decisions establishing the legal principle thus stated, not only to preserve uniformity in our adjudications, but because we think it sound, reasonable and just, and supported by the analogies of the law and the opinions of the respectable judicial tribunals of our sister states.

In view of the principles thus stated, we concur in the decision made by the judge, who presided at the trial of this cause at the circuit, that the note offered in evidence by the plaintiff, with the blank indorsement of the defendant, was not admissible in support of the count in the declaration, charging the defendant as a joint and several promiser of the note, nor, accompanied with the other evidence, in support of that count, because the blank indorsement of itself does not imply the contract alleged in that count : nor does the evidence offered, tend to prove such a contract as is alleged in the first count.

The record, however, states, that the plaintiff, in support of the second and third counts, offered the note, together with parol evidence tending to show, that the defendant, at the time of indorsing the note, did in fact assume, promise and guarantee the payment of the note, in the manner set forth in the second and third counts ; that such was the understanding of the parties ; and that such an agreement having been actually made, it might lawfully be written over the blank indorsement.   An objection was taken, by the defendant, to the parol testimony offered, on the ground that the legal import of the indorsement could not be varied, by parol evidence.   The court sustained the objection, and excluded the evidence.

In the rejection of this testimony, the judge, whatever may have been his own opinion, doubtless considered himself bound, by the latest adjudication at the circuit of which he had know-

ledge, and which was in accordance with the opinion he expressed.    The point is, however, now before a full court; and we are at liberty and bound to dispose of it, in conformity to what we believe to be the legal principles and precedents applicable to it.

Litchfield,
June, 1836.

Perkins
v.
Catlin.

It has been urged, that a decision upon this point becomes unnecessary, inasmuch as the motion states, that " no evidence was offered by the plaintiff, that the defendant ever gave the plaintiff any authority to fill up the indorsement, other than what was implied from the indorsement itself ;"—that the parol testimony, which was rejected, was merely of conversations antecedent to the indorsement, which were merged in the written indorsement, and therefore, properly rejected :—or if such is not the fair construction of the motion, still, as no authority was proved to have been given, it is to be presumed the defendant did not intend to give, and did not in fact give any authority to vary the *prima facie* legal import of his indorsement ; and in this view, the testimony was rightly rejected.    We cannot yield our assent to either view thus taken of the motion, by the defendant.    It is to receive such a construction as the words, taken in their ordinary sense, and by fair interpretation, require. The motion expressly states, that the evidence offered was of an agreement actually made, by the defendant, at the time he indorsed the note, corresponding with the contract set up in the second and third counts.    It was, then, an offer to prove what was the real contract between the parties; that it was not reduced to writing in form, but that in pursuance of it, and to carry it into effect, the defendant indorsed his name in blank on the note.    By the expression in the motion, " no evidence was offered of any authority to fill up the indorsement," we understand, that no express authority was given to that effect, in words : but it would be a harsh and rigid construction of the motion, were we to assume, that the defendant refused to permit the indorsement to be so filled up, and that the plaintiff did not claim that the evidence offered, conduced to prove an implied authority to make the indorsement correspond with the contract it was designed to express.    We think there is no reasonable doubt such was the precise offer of the plaintiff, and such the tendency of the evidence which he sought to present to the jury.

We are now prepared to consider the question, whether this evidence should have been received.    It is one of some impor-

*Litchfield,*
June, 1836.

Perkins
*v.*
Catlin.

tance, and as it is understood by us, that there have been con-flicting decisions at the circuit, it is proper it should now be, if it has not heretofore been, definitely settled. The enquiry is, whether, as between the payee of a negotiable note and a third person, who has indorsed it in blank, as a further security to the payee, it is competent for the payee to prove, by parol, the agree-ment which was in fact made, at the time of the indorsement, and the performance of which, the indorsement was intended to secure?

Two objections have been urged against the admission of this testimony. It is insisted, that it contravenes the legal import of the indorsement, which cannot be varied by parol evidence; and that it is in opposition to the statute of frauds and perjuries.

1. The first objection assumes, that a blank indorsement, when intended as a warranty, necessarily and in all cases, im-ports a warranty of a particular character; that it is to be read and understood as though that precise contract was in writing over the signature of the indorser; and therefore, it cannot be varied, by oral evidence. This, we think, is neither more nor less than a *petitio principii.* It takes for granted the very point in issue, whether a blank indorsement is conclusive, or *prima facie* evidence only of the contract which was in fact made; and assuming it to be always conclusive, applies to it the well established rule, that parol evidence is inadmissible to con-troul, alter, or contradict a written agreement. In our opinion, such an indorsement is but *prima facie* evidence of the contract expressed by it. In the absence of all proof, it is to be presu-med to have been made with reference to its legal meaning. If no other agreement was in fact made, but such as the law will imply from the indorsement itself, such indorsement ceases to be equivocal, and full effect is to be given to its legal signifi-cation. The reason why, in such case, the evidence of the contract is to be derived from the indorsement, is, that it is a fair presumption the blank indorsement, when unattended with any different contract in fact, was intended by the parties, to express their whole meaning. The law acts upon the reason-able supposition, that where both parties acquiesce in giving and receiving a blank indorsement merely, and make no other or different contract than such an indorsement implies, they are content to acquire no other rights, and be subject to no other liabilities, than the law implies from the signature of the indor-

ser.   The intention of the parties is thus ascertained and carried into effect.   The agreement into which they have entered is enforced ; their legal and equitable rights are protected ; and the payee is precluded from availing himself of any other contract than that which was made ; and the indorser is secured, by the performance of that agreement only to which he was a party.   It is upon this ground alone, that the law, *prima facie,* implies any specific contract as resulting from a blank indorsement.   While in blank, the signature, without the legal presumption, is without meaning.   Some effect is to be given to it, if it creates any liability or confers any rights ; and when there is no evidence of what was in fact intended by it, the law gives it a meaning : it declares what was the intention of the parties ; and the indorser who signs in blank, knows, when he affixes his signature, which itself is to express the contract he has made, that, in legal contemplation, he has written over his name, just what the law presumes he intended to write.   We do not, however, readily perceive, that the legal inference ought to preclude the parties from proving what the real contract was ; or how the rights of either are invaded or sacrificed, by permitting the truth to be stated.   The agreement actually made ought, in justice, to be enforced ; and a rule of law framed for that purpose, and designed to carry into effect the intention of the parties, ought not to be perverted to thwart this intention and aid in the violation of this agreement : and yet, such will be the result of holding the presumption applied to a blank indorsement, to be a *presumptio juris et de jure,* which cannot be rebutted.   We should require the support of clear analogies and established precedents, before we yielded our assent to a doctrine so unjust and arbitrary as the objection we are now considering, advances.   The evidence offered did not contradict the agreement in writing.   On the contrary, it ascertained, with precision, the contract into which the parties entered.   It was to be used, to point the application to the subject matter, and not to usurp the authority of the written indorsement.   It is the latter which operates ; the oral evidence does no more than assist the operation, by pointing out and connecting it with the proper subject matter.   It acts in aid and assistance of the indorsement, and performs that duty, which, on every application of a written instrument, must be accomplished, by means of extrinsic evidence—that is—it points out the precise object

to which the instrument is applicable.   A blank indorsement may be proved, by parol, to have been made merely for the purpose of collection.   *Prima facie*, it purports to be a contract of warranty ; but this presumption may be removed, by oral proof that no such contract was in fact made.   And if the evidence may be received, for such purpose, it is difficult to perceive why it may not be introduced to shew what was the agreement of the parties, which the indorsement was designed to denote. In both cases, it is offered for the same purpose—to give a different interpretation to the indorsement from that which it *prima facie* imports, by proof of the actual agreement which was made.   For the same reason, it is competent, as between the immediate parties, to shew, that a note indorsed in blank, was intended only as a renewal of a previous note.   The indorsement is not *controuled*, by the oral testimony, but *completed* according to the manifest intention of the parties.   The evidence is offered in conformity with the familiar rule, that the law does not imply a contract where an express one has been made.   *Expressum facit, cessare tacitum.*   Such evidence has been received in *Great-Britain,* and in our sister states, almost without objection.   In *Smith* v. *Barber,* 1 *Root* 207., the first question made was, whether parol evidence might be admitted to explain the blank indorsement and the intent of the parties therein ?   And the court say, the evidence is admissible ; for a blank indorsement, until it is filled up, by the indorser, has no certain import ; it may be for one purpose or another, or for none at all ; and therefore, it may be explained by parol testimony.   In *Brewster* v. *Dana,* 1 *Root* 267., it is said, by the court, a blank indorsement has no certain import until filled up with something written over it.   In *Barker* v. *Prentiss,* 6 *Mass. Rep.* 430., the indorsement on the bill was regularly filled up, directing a payment to order ; and it was objected, that parol evidence ought not to have been admitted to controul or explain the legal effect of the indorsement.   Ch. J. *Parsons,* in giving the opinion of the court, says, this objection ought not to prevail ; for although at common law, a written simple contract must be explained according to the true construction of the terms of it, and not by parol evidence, where there are no latent ambiguities, because the written terms of the contract are better evidence of its intent than any parol explanation ; yet, he adds, parol evidence may be given to contradict a written sim-

ple contract, or to shew that the whole of it was not reduced to writing, but that it was made with certain conditions or limitations, expressly agreed upon, but not contained in the written contract, when the action is between the original parties. Thus, it is every day's practice, notwithstanding a promissory note is expressed to be for value received, to admit the promiser, in an action by the promisee, to prove there was no consideration. The same doctrine is advanced, by the court, in *Herrick* v. *Carman*, 10 *Johns. Rep.* 224. In *Badger* v. *Jones*, 12 *Pick.* 371., such evidence was received, and submitted to the jury.

*Litchfield*,
June, 1836.
———
Perkins
v.
Catlin.

We might refer to many other cases similar to those we have cited, but we deem it unnecessary. The principle which all of them declare and sustain, is, that as between the immediate parties, a blank indorsement is *prima facie* evidence only of the contract which they have made, and like all other such legal presumptions, may be explained, by parol evidence ; for it neither controuls, alters, nor contradicts the written indorsement, but is entirely consistent with it.

2. A second objection is urged against the reception of the oral evidence, derived from the provisions of the statute of frauds. It is insisted, that a blank indorsement, when intended as a warranty, is a promise, upon condition, to pay the debt of another, which, to be valid, must be in writing ; and that the testimony offered, was an attempt to prove on the defendant, an agreement, by parol, to pay another's debt, and falls precisely within the words and spirit of the statute. We think this ought not to prevail. It has no foundation in principle ; nor is it supported, by any precedent, to which we have been referred, or have been able to find. On the contrary, it has been repeatedly repudiated. The indorsement, being in writing, and in blank, is, of itself, an authority to write over it, the agreement it was designed to express. " Proof of the name, is proof of the indorsement." There is a *memorandum* of the contract, signed by the party to be charged by it ; or rather, the contract itself is so signed. We do not perceive, if the present objection should be sustained, but that in every case of a blank indorsement, the statute of frauds and perjuries would be an insuperable bar to the admission of parol evidence to prove a limited contract. Indeed, it must have the effect to exclude all such evidence, even when the indorsements are in full: and, yet, we all know it is every day's practice to receive oral testimony

to prove an indorsement in full, to have been intended between the parties, only to facilitate its collection, or as a substitution of the note so indorsed, by way of renewal of a previous note. The statute was never intended to apply to cases of this description. We believe it never has been so applied. In *Barker* v. *Prentiss,* 6 *Mass. Rep.* 430. the court say, neither a bill of exchange on its face, nor the indorsements, are within the statute of frauds. In *Ulen* v. *Kittredge,* 7 *Mass. Rep.* 233., it is said, by the court, that the defendant's signature upon the back of the note, (which was an indorsement in blank) with the authority given by him to the witness to write over the signature a sufficient guaranty; and such guaranty being accordingly written, by the witness, pursuant to the authority; may be considered as a *memorandum* signed by the party, within the intent of the statute, [of frauds] as fully as if it had been written in the defendant's presence, immediately after the signature. And parol evidence was as well admissible to prove this authority, as it is in any case upon a promise in writing, to prove the hand-writing of the party making the promise. In *Moies* v. *Bird,* 11 *Mass. Rep.* 436. this objection was made and overruled. In *Nelson* v. *Dubois,* 13 *Johns. Rep.* 175. the judgment of the court below was reversed, because parol evidence of the agreement accompanying the blank indorsement, was rejected, as within the statute of frauds. In *Turnbull* & al. v. *Trout,* 1 *Hall* 336., the objection growing out of the statute, was fully examined by the court, and considered untenable.

It is, however, urged, that whatever may have been the decisions in *Great-Britain,* or elsewhere, we have, in *Connecticut,* a law of our own, different from what prevails there; that by usage, as well as by judicial decisions, we have changed the common law, and established a different rule; and that, in this state, a blank indorsement has a fixed, definite legal meaning and import, which no extrinsic agreement of the parties can vary, and which precludes the insertion of any special contract repugnant to the legal nature of such an indorsement. We are not aware, that any such usage has ever prevailed in this state; nor have we been referred to any decisions, which, it is said, have effected such an important change in the rules of the common law. Some extra-judicial opinions, foreign to the points adjudicated in the cases where they are found, have

not escaped our notice. They may be seen in *Huntington* v. *Harvey*, 4 *Conn. Rep.* 129. *Palmer* v. *Grant, Id.* 399. *Welton* v. *Scott, Id.* 532. Our researches have not enabled us to discover a single case, in which this court have advanced the doctrine for which the defendant contends. So far from this, we think the usage in relation to this subject, has been the very reverse of what is now claimed. As early as 1823, this court, upon full deliberation, did decide, that a blank indorsement of a negotiable note, made by a third person, with a view and in pursuance of an agreement to guarantee the payment of the note to the payee, might be filled up with the agreement so made : that parol proof of the special agreement was admissible, not being in contravention of the provisions of the statute of frauds, nor opposed to the rule of the common law, that a written instrument cannot be controuled, altered, nor contradicted, by parol testimony. Since that decision, we had hoped the law in relation to the admissibility of such evidence, would be considered, by the profession and the public, as finally settled. If we thought the doctrine established by that case, questionable on principle, (which we do not) we should yield to its authority, and adhere to it, as having declared a rule, by which the rights and duties of parties in the condition of those now before the court, and in respect to the point now under consideration, have been defined. If there has been, heretofore, a diversity of opinion regarding the competency of this proof, we indulge the hope, that henceforth, the question will be considered at rest.

A reference to our own reports, and the commentators on our law, is all which we deem it necessary to add. Ch. J. *Swift*, in his *System*, published, 1796, *p.* 159. says, the courts have determined, that parol evidence may be admitted to explain the meaning of a blank indorsement; for until it is filled up, by the indorsee, it has no certain import. In his treatise on *Bills of Exchange, pp.* 342, 3., he says, in the case of an indorsement in blank, before it is filled up, and while it remains in the hands of the first assignee, the assignee will be at liberty to show, by parol proof, that at the time of indorsing the note, there was an agreement between the parties, that he should not warrant the note, and that the assignee should take it at his own risk, or that it was indorsed and delivered to the assignee as agent of the assignor, to collect and account for it to him. In his

Perkins
*v.*
Catlin.

*Digest, p.* 434. he observes, while the indorsement remains in blank, and in the hands of the first assignee, it is admissible for the assignor to shew *any special agreement* between him and the assignee, made at the time of the assignment ; as that there should be no warranty, or that it was delivered to the assignee as an attorney to collect.   These principles are supported, by the two cases before-mentioned, *Smith* v. *Barber,* 1 *Root* 207. *Brewster* v. *Dana, Id.* 267.   The case of *Beckwith* v. *Angell,* decided by this court, (6 *Conn. Rep.* 315.) fully sustains the same doctrine.   It was suggested, that one of the judges in that case, observed, that it might, with propriety, be decided as arising under the law of *Rhode-Island,* where the indorsement was made, and not with reference to the law of this state :—but it is to be remarked, that the same judge said, in his opinion, the peculiar meaning, which, in this state, has been attached to blank indorsements of promissory notes not negotiable, might be varied, by proof of a positive contract, made at the time when the note was indorsed.

Some minor objections were made to the admission of the evidence which was offered, founded on supposed variances between the proof and the allegations in the different counts comprising the declaration.   We do not consider it necessary to make any other answer to them, than that they have not been overlooked by us, and that we do not think they can be sustained on principle ; nor have they been supported by authority.

Upon the whole, we are of opinion, that the court below should have received the testimony, which was offered in support of the second and third counts of the declaration ; and in consequence of its rejection, a new trial is advised.

The other Judges concurred in this opinion.

New trial to be granted.